# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW MAYNARD, individually, and on behalf of Maynard Investment Group, LLC d/b/a Discount Sport Nutrition, Plaintiff, | § § § § § § § § § § § | Civil Action No. 18-259 |
| v. | | |
| PAYPAL, INC., and PAYPAL HOLDINGS, INC., Defendants. | | |

## PLAINTIFF'S AMENDED RESPONSE OPPOSING DEFENDANTS' MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION

Respectfully submitted,

THE LAW OFFICE OF JEFFREY R. DUFFEY

*/s/ Jeffrey R. Duffey*
**JEFFREY R. DUFFEY**
Texas Bar Card No. 24101712
O: (214) 504-6692
jeff@jrduffeylaw.com
4925 Greenville Ave., Ste 200
Dallas, Texas 75206

*Attorney for Plaintiff,*
*Matthew Maynard*

PLAINTIFF'S AMENDED RESPONSE OPPOSING DEFENDANTS' MOTION TO STAY PROCEEDINGS
AND COMPEL ARBITRATION
Matthew Maynard v. PayPal, Inc., and PayPal Holdings, Inc.

1

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................. 5

II.  ARGUMENT AND AUTHORITIES ..................................................................................... 6

   A.  MAYNARD DID NOT AGREE TO ARBITRATE HIS CLAIMS AGAINST PAYPAL ......................... 7

      1.  Maynard did not agree to PayPal's arbitration agreement where he was
          never notified of the addition and he never assented to be bound by it ....... 8

      2.  Publishing changes to a website and sending emails to customers—without
          more—is insufficient to prove constructive or actual notice ......................... 10

   B.  PAYPAL'S ARBITRATION AGREEMENT IS ILLUSORY BECAUSE AMENDMENTS TO THE
       AGREEMENT ARE NOT LIMITED TO "ONLY PROSPECTIVE CLAIMS" ................................... 12

      1.  PayPal's arbitration agreement is illusory under the line of recent Fifth
          Circuit cases that have adopted *Halliburton* and which control the outcome
          of this case ...................................................................................................... 12

      2.  PayPal's arbitration agreement fails the Prospective Claims prong of the
          *Lizalde* Test because it expressly grants retroactive application as to
          disputes that *"have arisen"* .............................................................................. 16

III. CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Federal Cases**                                                                    **Page(s)**

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ..........................................................................................................2

*Badie v. Bank of America,*
  79 Cal.Rptr.2d 273 (Ct. App. 1998)...................................................................................4

*Be In, Inc. v. Google Inc.,*
  No. 12–cv–03373–LHK, 2013 WL 5568706 (N.D.Cal. Oct. 9, 2013) ....................................7

*Brendel v. Meyrowitz,*
  3:15-CV-1928-D, 2016 WL 302282 (N.D. Tex. Jan. 25, 2016)...........................................4

*Carey v. 24 Hour Fitness, USA, Inc.,*
  669 F.3d 202 (5th Cir. 2012) ................................................................................... passim

*Chester v. DirecTV, L.L.C.,*
  607 Fed. Appx. 362 (5th Cir. 2015)....................................................................................4

*Childs v. Thousand Oaks at Austin Ranch,*
  3:15-CV-2303-D, 2016 WL 4800339 (N.D. Tex. Sept. 14, 2016) ..........................................4

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.,*
  495 F.3d 1062 (9th Cir. 2007) ............................................................................................5

*Elsadig v. Luxottica Retail N. Am., Inc.,*
  3:16-CV-2055-L, 2017 WL 3234027 (N.D. Tex. July 31, 2017)............................................3

*Erin Green v. Infosys, Ltd.,*
  4:17-CV-00432, 2018 WL 1046637 (E.D. Tex. Feb. 26, 2018) ........................................4, 7

*Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.,*
  882 F.3d 574 (5th Cir. 2018) ............................................................................................16

*Fteja v. Facebook, Inc.,*
  841 F.Supp.2d 829 (S.D.N.Y.2012) .....................................................................................7

*Galan v. Valero Services, Inc.,*
  2:17-CV-256, 2018 WL 447358 (S.D. Tex. Jan. 17, 2018) ....................................................3

*Harris v. Blockbuster,*
  622 F. Supp. 2d 396 (N.D. Tex. 2009) ..............................................................................16

*In re Online Travel Co.,*
  953 F. Supp. 2d 713 (N.D. Tex. 2013) ............................................................................3, 7

*Janvey v. Alguire,*
  847 F.3d 231 (5th Cir. 2017) ..........................................................................................7, 15

*Lizalde v. Vista Quality Markets,*
    746 F.3d 222 (5th Cir. 2014) ................................................................................. passim

*Morrison v. Amway,*
    517 F.3d 248 (5th Cir. 2008) ................................................................................. passim

*Nelson v. Watch House Intern., L.L.C.,*
    815 F.3d 190 (5th Cir. 2016) ................................................................................. passim

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) ......................................................................................6, 7

*Nicosia v. Amazon.com, Inc.,*
    834 F.3d 220 (2d Cir. 2016) ..............................................................................................7

*Okocha v. Hosp. Corp. of Am., Inc.,*
    3:10-CV-1763-D, 2011 WL 4944577 (N.D. Tex. Oct. 18, 2011) .................................4, 7

*Peleg v. Neiman Marcus Group, Inc.,*
    140 Cal. Rptr. 3d 45 (Ct. App. 2012) ...........................................................8, 12, 13, 16

*Perry v. Fleet Boston Fin. Corp.,*
    CIV.A.04-507, 2004 WL 1508518 (E.D. Pa. July 6, 2004) ......................................5, 6, 7

*Presta v. Omni Hotels Mgmt. Corp.,*
    4:17-CV-0912, 2017 WL 3038219 (S.D. Tex. July 18, 2010) ..................................14, 17

*Register.com, Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004) .........................................................................................6, 7

*Ruiz v. AH 2005 Mgmt., L.P.,*
    EP-17-CV-197-PRM, 2017 WL 4639702 (W.D. Tex. Oct. 13, 2017) ..............................13

*Sw. Airlines Co. v. BoardFirst, LLC,*
    No. 06–CV–0891–B, 2007 WL 4823761 (N.D.Tex. Sept. 12, 2007) ...............................7

*Torres v. S.G.E. Management, LLC,*
    397 Fed.Appx. 63 (5th Cir. 2010) ............................................................................11, 16

*Van Tassell v. United Mktg. Grp., LLC,*
    795 F.Supp.2d 770 (N.D. Ill. 2011) .................................................................................7

**Texas State Cases**

*In re Halliburton Co.,*
    80 S.W.3d 566 (Tex. 2002) ...........................................................................................8, 9

*J.M. Davidson, Inc. v. Webster,*
    128 S.W.3d 223 (Tex. 2003) .............................................................................................3

**Statutes**

9 U.S.C. § 4 .............................................................................................................................4

Plaintiff's Amended Response Opposing Defendants' Motion to Stay Proceedings          4
and Compel Arbitration
Matthew Maynard v. PayPal, Inc., and PayPal Holdings, Inc.

## I.    <u>INTRODUCTION</u>

Plaintiff, Matthew Maynard ("Maynard"), is a small business owner who sells and ships sport supplements to online consumers worldwide. Pl.'s Orig. Pet. 3, App. 003, (Ex. A). Defendants, PayPal, Inc. and PayPal Holdings, Inc. (collectively "PayPal"), provide online payment solutions for small business owners, like Maynard. Pl.'s Orig. Pet. 2-3, App. 002-003, (Ex. A). An unknown number of individuals purportedly located in India ("Buyers")[1] placed approximately 400 orders from Maynard's website, www.SportSupplements.com. Pl.'s Orig. Pet. 3, App. 003, (Ex. A). Starting in March 2017, all of these Buyers began initiating disputes in PayPal's dispute resolution center claiming that they never received their products, with Maynard sometimes receiving over 60 claims in a day. Pl.'s Orig. Pet. 4, App. 004, (Ex. A). Consequently, Defendants began systematically refunding the Buyers' money by way of removing the funds from Maynard's PayPal account. *Id.* Maynard informed Defendants that the Buyers' claims were meritless, and he provided Defendants with evidence clearly proving the Buyers were carrying out a scheme to defraud him of both his profits and his products. *Id.* These claims of fraud fell on deaf ears. *Id.* Maynard has since received over 500 Buyer claims, and PayPal has removed over $300,000 from Maynard's PayPal account. *Id.* PayPal suspended Maynard's account around May 2017. *Id.* Adding insult to injury, PayPal accused Maynard of committing fraud, and they have refused to remove his suspension. *Id.* Maynard's numerous attempts to resolve this matter outside the courtroom have been profoundly unsuccessful. Maynard Decl. ¶ 5, App. 167, (Ex. D). This suit followed.

Plaintiff sued Defendants in Texas state court on December 29, 2017 asserting claims for violations of the Texas Deceptive Trade Practices Act, breach of contract, breach of the covenant of good faith and fair dealing, conversion, breach of fiduciary duty, fraud, gross negligence, and tortious interference with a sales contract. Pl.'s Orig. Pet. 5-18, App. 5-18, (Ex. A). Maynard seeks damages as well as injunctive relief. Pl.'s Orig. Pet. 23-24, App. 23-24, (Ex. A). Defendants removed the state court action to this Court (Defs.' Not. Rem., Dkt. No. 1) and filed a Motion to Stay Proceedings and Compel Arbitration ("Motion to Compel Arbitration"). *See* Defs.' Mot. Compel Arbit'n 1-3, App. 147-49, (Ex. B).

---

[1] 58 separate PayPal user accounts were used to place the orders at issue here. However, it is believed that multiple PayPal accounts are being operated by the same individual; thus, the precise number of persons involved is unknown.

## II.   ARGUMENT AND AUTHORITIES

This Court should deny Defendants' Motion to Compel Arbitration for two reasons. First, the evidence PayPal has set forth does not sufficiently demonstrate that Maynard agreed to arbitrate his claims against PayPal. *See Janvey v. Alguire*, 847 F.3d 231, 240 (5th Cir. 2017) (a party cannot be compelled to arbitrate "any dispute which he has not agreed so to submit"). Second, the arbitration agreement is illusory and unenforceable because PayPal retains the unilateral power to modify or terminate the agreement, and there is no savings clause that expressly limits application of those changes "only to prospective claims." *See Nelson v. Watch House Intern., L.L.C.*, 815 F.3d 190, 195 (5th Cir. 2016) ("[A savings clause] is insufficient unless it provides *both* advance notice and a limitation to only prospective claims."); *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014) (holding that, where a savings clause does not expressly limit application of amendments only to prospective claims, the agreement is illusory).

A party seeking to compel arbitration to bears the burden of (1) establishing the existence of a valid arbitration agreement and (2) showing that the claims asserted are within the scope of the agreement. *See Nelson*, 815 F.3d at 193. Maynard does not dispute the second element related to scope; consequently, only the validity of the arbitration agreement is at issue here. When determining whether a valid arbitration agreement exists, courts must "place arbitration agreements on equal footing with other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (it is a "fundamental principle that arbitration is a matter of contract"). Accordingly, this Court must first consider whether Maynard and PayPal agreed to arbitrate. *See Nelson*, 815 F.3d at 192 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012). This determination is made by applying "ordinary state-law principles that govern the formation of contracts."[2] *Nelson*, 815 F.3d at 193 (quoting *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). While there is a strong presumption in favor of arbitration, this presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *See Morrison v. Amway* 517 F.3d 248, 254 (5th Cir. 2008).

---

[2] Plaintiff assumes Defendants are applying Texas law, since their Brief in Support of the Motion to Compel cites to several cases applying Texas law. Should Defendants argue in their Reply that Texas law does not apply, Plaintiff requests that the Court allow the parties to submit briefs on the issue.

PLAINTIFF'S AMENDED RESPONSE OPPOSING DEFENDANTS' MOTION TO STAY PROCEEDINGS
AND COMPEL ARBITRATION
Matthew Maynard v. PayPal, Inc., and PayPal Holdings, Inc.

6

### A. Maynard Did Not Agree to Arbitrate His Claims Against PayPal

Defendants seek to enforce an arbitration agreement that did not exist in Maynard's original user agreement ("Original Agreement").[3] *See* Maynard Decl. 1, App. 166, (Ex. D). Under Texas law, the party seeking to enforce an agreement to arbitrate must establish the same elements required for other valid contracts: offer (notice), acceptance, mutual assent, execution and delivery with the intent that it be mutual and binding, and consideration. *See In re Online Travel Co.*, 953 F. Supp. 2d 713, 718 (N.D. Tex. 2013); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003). Accordingly, the burden lies with the Defendants to satisfy each of these elements in order to establish the validity of the arbitration agreement they seek to enforce. *See Elsadig v. Luxottica Retail N. Am., Inc.*, 3:16-CV-2055-L, 2017 WL 3234027 (N.D. Tex. July 31, 2017) (a party seeking to compel arbitration has the initial burden of demonstrating that a valid arbitration agreement exists). Since Defendants have not demonstrated that they provided Maynard with adequate notice of the arbitration agreement, or that he affirmatively accepted PayPal's offer to add an arbitration agreement to their User Agreement, they have failed to establish the requisite elements proving the existence of a valid agreement. *See In re Online Travel*, 953 F. Supp. 2d at 718.

As an initial matter, Defendants have provided only conclusory statements of law to support their Motion to Compel Arbitration. Consider these examples. "The Court should compel Plaintiff's claims to arbitration. The Agreement to Arbitrate is a valid, enforceable agreement that…requires the parties to [arbitrate] any and all disputes or claims that have arisen or may arise between you and PayPal…." *See* Defs.' Mot. Compel Arbit'n 1, App. 147, (Ex. B). Likewise, Defendants' Brief in Support of their Motion to Compel Arbitration commits the same error, "Here, there is a valid arbitration agreement between Plaintiff and PayPal….Therefore, the Court should enforce the Agreement to Arbitrate…" *See* Defs.' Br. Supp. Mot. Compel Arbit'n 6, App. 159, (Ex. C). These statements are not factual allegations sufficient to prove that a valid arbitration agreement exists between the parties; rather, they are conclusions of law couched as fact.

Whether Maynard accepted this material alteration to the Original Agreement is a question of fact. *See Galan v. Valero Services, Inc.*, 2:17-CV-256, 2018 WL 447358, at *9 (S.D. Tex. Jan. 17, 2018). Because Maynard denies both receiving notice and agreeing to be bound by the arbitration agreement, there is a disputed issue of material fact as to whether a valid agreement

---

[3] The arbitration agreement Defendants seek to enforce is contained in the user agreement dated March 29, 2017 (the "User Agreement"). Maynard entered into his Original Agreement with PayPal in the year 2000.

Plaintiff's Amended Response Opposing Defendants' Motion to Stay Proceedings                                    7
and Compel Arbitration
Matthew Maynard v. PayPal, Inc., and PayPal Holdings, Inc.

exists. Pursuant to 9 U.S.C. § 4, if the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the parties are entitled to a trial on the issue. *See Chester v. DirecTV, L.L.C.*, 607 Fed. Appx. 362, 363 (5th Cir. 2015) (where a motion to compel arbitration is filed and "the making of the arbitration agreement is in dispute, a court must hold a trial on the existence of an arbitration agreement."); *Brendel v. Meyrowitz*, 3:15-CV-1928-D, 2016 WL 302282, at *1 (N.D. Tex. Jan. 25, 2016) (the FAA "provides that [i]f the making of the arbitration agreement...be in issue, the court shall proceed summarily to the trial thereof.").

### 1.  Maynard did not agree to PayPal's arbitration agreement where he was never notified of the addition and he never assented to be bound by it

Generally speaking, a party can't unilaterally change the terms of a contract without obtaining the other party's consent. *See Erin Green v. Infosys, Ltd.*, 4:17-CV-00432, 2018 WL 1046637, at *4 (E.D. Tex. Feb. 26, 2018); *Okocha v. Hosp. Corp. of Am., Inc.*, 3:10-CV-1763-D, 2011 WL 4944577, at *2 (N.D. Tex. Oct. 18, 2011) ("If a party seeks to modify a preexisting agreement to contain an agreement to arbitrate, it can do so, but the modification must satisfy the elements of a contract under Texas law: a meeting of the minds supported by consideration."). "[M]utual assent concerning material terms [such as the addition of an arbitration clause] is a prerequisite to the formation of a binding contract." *Childs v. Thousand Oaks at Austin Ranch*, 3:15-CV-2303-D, 2016 WL 4800339, at *4 (N.D. Tex. Sept. 14, 2016) ("[A] meeting of the minds refers to a mutual understanding and assent to the agreement regarding the subject matter and the essential terms of the contract"). Maynard maintains that he was never notified when PayPal added an arbitration agreement to the Original Agreement; thus, he could not have agreed to be bound by an agreement he never knew existed. *See* Maynard Decl. 1, App. 166, (Ex. D).

In *Badie v. Bank of America*, the plaintiff's credit cardholder agreement did not originally include an arbitration agreement, but the bank later added one and sent notice of the change in the form of a "bill stuffer" pursuant to a change-in-law provision in the cardholder agreement. 79 Cal.Rptr.2d 273, 284 (Ct. App. 1998). In holding that the arbitration provision was unenforceable, the court reasoned that, "when the account agreements were entered into, the parties did not intend that the change of terms provision should allow the Bank to add completely new terms such as an arbitration clause simply by sending out a notice." *Badie*, 79 Cal.Rptr.2d at 284. The rule in *Badie* can be summed up as follows: the change-in-terms provision in the cardholder agreement did not give the bank free reign "to add new contract terms that differ *in kind* from the terms and conditions included in the original agreement." *Id.* at 289. To reach the opposite conclusion would mean that all original account holders did, in fact, authorize the bank to add

the arbitration clause, "and it would also have to be assumed that by agreeing to the change of terms provision, the bank's customers intended to permit a modification that would amount to waiver of their constitutionally-based right to a jury trial." Such a conclusion defies common sense and would certainly call into question the validity of the entire agreement. This absurd conclusion also lends support to the argument that, assuming a change-in-terms clause was included in the Original Agreement, that Maynard did not intend for it to allow PayPal to add new contract terms such as the arbitration clause currently at issue.

Similarly, in *Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, a man purchased long distance phone service with America Online ("AOL"). 495 F.3d 1062, 1065 (9th Cir. 2007). Talk America subsequently acquired AOL's long distance service and "added four provisions to the service contract: (1) additional service charges; (2) a class action waiver; (3) an arbitration clause; and (4) a choice-of-law provision pointing to New York law." *Id*. Talk America posted the revised contract online but never notified the consumer of the changes. *See id*. at 1066. Unaware of the new terms, Douglas continued using Talk America's services for several more years. *Id*. Upon finding out about the new terms, Douglas filed a class action lawsuit, charging Talk America with "violations of the Federal Communications Act, breach of contract and violations of various California consumer protection statutes." *Id*. at 1067. Talk America moved to compel arbitration seeking to enforce the modified contract and the district court granted the motion. *Id*. at 1067-68. The Ninth Circuit reversed the district court's decision holding that nothing in Douglas' original AOL agreement "would have alerted him to the fact he might someday be deemed to have agreed to give up his right to a jury trial; [consequently,] the burden falls onto Talk America to show that he did so agree." *Id*. at 1068.

And finally, in the case of *Perry v. Fleet Boston Fin. Corp.*, a company added an arbitration provision to an agreement in which the "original agreement made no mention of dispute resolution." CIV.A.04-507, 2004 WL 1508518, at *2 (E.D. Pa. July 6, 2004). The court had to decide whether or not the change-in-terms provision contained in the original agreement authorized the company to unilaterally add an arbitration clause at a future date. *See Perry*, 2004 WL 1508518 at *2. Because it was a standardized contract, the court construed the original change-in-law provision against the drafter and concluded that it "applies only to those terms already contained or contemplated in the original agreement" and therefore did not authorize the addition of an arbitration clause. *Id*. at *4. The court emphasized that "nothing in these terms would alert a consumer to the fact that [the defendant] might later impose a term abrogating their rights to pursue disputes in a civil forum." *Id*.

The similar facts between this case and those in *Badie*, *Douglas*, and *Perry* are instructive. That is, each of the cases above involved an original agreement that did not contain a dispute resolution provision, and the drafter of the agreement unilaterally added an arbitration provision to the agreements years later. And when a dispute arose, the drafters of the agreements tried to enforce the new arbitration agreement. In each case, the respective courts held that the parties did not intend for the change-of-terms provision in their original agreement, which was silent as to dispute resolution methods, to permit the unilateral addition of an arbitration agreement. And this case is no different.

Because Maynard's Original Agreement contained no dispute resolution methods,[4] PayPal must prove that one or more terms in the Original Agreement, which was completely silent on the matter of arbitration, would have somehow alerted Maynard "to the fact he might someday be deemed to have agreed to give up his right to a jury trial, or waive his right to file a class-action suit. *Douglas*, 495 F.3d 1068. Therefore, "the burden falls onto [PayPal] to show that he did so agree." *Id.*; *see also Perry*, 2004 WL 1508518, at *4 ("[the original contract between the parties] did not include any mention of arbitration or any other forum for dispute resolution. Accordingly, nothing in these terms would alert a consumer to the fact that [the company] might later impose a term abrogating their rights to pursue disputes in a civil forum").

## 2. Publishing changes to a website and sending emails to customers—without more—is insufficient to prove constructive or actual notice

While E-commerce has exposed courts to many new situations, "it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004). Thus, even where Defendants could prove that notice was provided, the Defendants must still show that Maynard manifested his mutual assent to be bound by the agreement. *Id.* Continued use of a website is insufficient to give rise to constructive notice where a website provides no notice to users nor prompts them to take any affirmative action to demonstrate assent. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178–79 (9th Cir. 2014). Even sending emails—without more—is insufficient to give rise to constructive notice. *Id.* PayPal purportedly publishes changes to its arbitration agreement on their website and sends out an email notifying consumers of these changes. *See* Pl.'s Orig. Pet. 062, App. 062, (Ex. A). neither of these require the user to take affirmative action, such as clicking a box that states "I agree to the new terms".

---

[4] It is unclear if Maynard's Original Agreement contained a change-in-terms clause.

Assuming that PayPal did send notice of any changes, whether or not Maynard affirmatively assented to such notices should be evaluated under the same standards applied to Browsewrap agreements. One common way of alerting Internet users to terms and conditions is via a "clickwrap" agreement, which typically requires users to click an "I agree" box after being presented with a list of terms or conditions of use. *See Register.com*, 356 F.3d at 402–03, 429. Clickwrap agreements force users to "expressly and unambiguously manifest either assent or rejection prior to being given access to the product." *Id*. at 429. By way of contrast, "browsewrap" agreements involve terms and conditions posted via hyperlink, commonly at the bottom of the screen, and do not request an express manifestation of assent. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016). Finally, in a pure-form browsewrap agreement, the website will contain a notice that—by using the services of, obtaining information from, or initiating applications within the website—the user is agreeing to and is bound by the site's terms of service." *Nguyen*, 763 F.3d at 1176 (quoting *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y.2012)) (quotation and internal quotation marks omitted). Assent is even more attenuated in browsewrap agreements than in the clickwrap or shrinkwrap contexts because "user[s] can continue to use the website or its services without visiting the page hosting the browsewrap agreement or even knowing that such a webpage exists." *Be In, Inc. v. Google Inc.*, No. 12–cv–03373–LHK, 2013 WL 5568706, at *6 (N.D.Cal. Oct. 9, 2013). As a result, courts generally require users to have actual or constructive knowledge of a website's terms and conditions before enforcing browsewrap agreements. *Sw. Airlines Co. v. BoardFirst, LLC*, No. 06–CV–0891–B, 2007 WL 4823761, at *4 (N.D.Tex. Sept. 12, 2007); *Nguyen*, 763 F.3d at 1176; *Van Tassell v. United Mktg. Grp., LLC*, 795 F.Supp.2d 770, 790 (N.D. Ill. 2011).

To summarize, the party seeking to enforce an agreement to arbitrate must establish the same elements required for other valid contracts: offer (notice), acceptance, mutual assent, execution and delivery with the intent that it be mutual and binding, and consideration. *In re Online Travel*, 953 F. Supp. 2d at 718; *Davidson*, 128 S.W.3d at 228. PayPal has not sufficiently established two of these elements: notice and mutual assent. Generally, a party can't unilaterally change the terms of a contract without the other party's consent. *See Green*, 2018 WL 1046637, at *4; *Okocha*, 2011 WL 4944577, at *2. Maynard's Original Agreement was silent as to any dispute resolution methods, so PayPal must prove that one or more terms in the Original Agreement somehow alerted Maynard to the fact "he might someday be deemed to have agreed to give up his right to a jury trial." *Perry*, 2004 WL 1508518, at *4. Defendants have offered no evidence to prove that they have sufficiently met this burden. As a result, PayPal had no authority to unilaterally add the arbitration agreement to Maynard's Original Agreement without his consent.

Plaintiff's Amended Response Opposing Defendants' Motion to Stay Proceedings and Compel Arbitration
Matthew Maynard v. PayPal, Inc., and PayPal Holdings, Inc.

11

Consequently, Maynard is not bound by it and he cannot be forced to arbitrate his claims against PayPal.

### B.   PAYPAL'S ARBITRATION AGREEMENT IS ILLUSORY BECAUSE AMENDMENTS TO THE AGREEMENT ARE NOT LIMITED TO "ONLY PROSPECTIVE CLAIMS"

The arbitration agreement at issue is illusory and unenforceable because PayPal retains the unilateral power to modify or terminate the agreement, and it lacks a savings clause that expressly limits such modifications "only to prospective claims." *See Nelson*, 815 F.3d at 195 (citing *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014) (an arbitration agreement must contain an express savings clause limiting the application of any amendments "to only prospective claims"). It is well established that arbitration agreements are illusory where they permit one party (often the one with significantly more bargaining power) to alter the terms of an agreement that have retroactive effect—i.e. changes that apply to claims of which they have knowledge prior to change. *Nelson*, 815 F.3d at 195 (holding that an arbitration agreement is illusory when one party can make unilateral changes to the agreement that apply retroactively); *accord Lizalde*, 746 F.3d at 226 (holding same); *Carey*, 669 F.3d at 205 (holding same); *Morrison*, 517 F.3d at 254 (holding same); *cf. In re Halliburton Co.*, 80 S.W.3d 566, 569-570 (Tex. 2002) (upholding an arbitration agreement as valid and not illusory where it contained a savings clause expressly providing that "no amendment [to this arbitration agreement] shall apply to a dispute of which [the employer] had actual notice on the date of the amendment or termination"). "[T]he fundamental concern driving this line of case law is the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it." *Carey*, 669 F.3d at 209. Thus, if a claim has accrued, or if the other party knows about an existing dispute, all parties to the agreement should be bound by the version in effect at that time; no changes should apply after the point of accrual or knowledge. *See Peleg v. Neiman Marcus Group, Inc.*, 140 Cal. Rptr. 3d 38, 45 (Ct. App. 2012).

### 1.   PayPal's arbitration agreement is illusory under the line of recent Fifth Circuit cases that have adopted *Halliburton* and which control the outcome of this case

When determining whether an arbitration agreement is illusory under Texas law, the Fifth Circuit has adopted the reasoning in *Halliburton. See Nelson*, 815 F.3d at 195 ("A *Halliburton*-type savings clause is insufficient unless it provides *both* advance notice and a limitation to only prospective claims."). In this seminal Texas Supreme Court case, Halliburton notified its employees in November 1997 that it was implementing a new arbitration program, and the

change would become effective on January 1, 1998. *See Halliburton*, 80 S.W.3d at 568. All of the employees received the notice, and all of them "continued to work for Halliburton after January 1, 1998, thus accepting the change as a matter of law." *See Halliburton*, 80 S.W.3d at 569. The plaintiff sued Halliburton in 1999 over a dispute that arose long after the arbitration clause was made effective, and Halliburton moved to compel arbitration under the terms of their agreement. *See Halliburton*, 80 S.W.3d at 567. The plaintiff argued that the agreement was illusory "because the company retained the right to modify or discontinue the program." *Halliburton*, 80 S.W.3d at 569. The Texas Supreme Court disagreed with the plaintiff and upheld Halliburton's arbitration agreement as valid and not illusory, because the agreement contained two savings clauses that properly restrained Halliburton's ability to alter the agreement. *See Halliburton*, 80 S.W.3d at 569-70. The *Halliburton* court held

> "[Specifically as to Halliburton's power to amend the program, the agreement provided that] *no amendment shall apply to a dispute of which [Halliburton] had actual notice on the date of the amendment*. As to termination, the plan stated that *termination shall not be effective until 10 days after reasonable notice of termination is given . . . or as to disputes which arose prior to the date of termination*. Therefore, Halliburton cannot avoid its promise to arbitrate by amending the provision or terminating it altogether. Accordingly, the provision is not illusory."

*Halliburton*, 80 S.W.3d at 570 (emphasis added).

In *Morrison*, the Fifth Circuit had occasion to interpret *Halliburton* under a similar set of facts. 517 F.3d at 251. Like *Halliburton*, the company here (Amway) took steps to add an arbitration agreement to their company policies for the first time. *See Morrison*, 517 F.3d at 251. Amway gave notice of their intent to change the policy in September 1997, and informed them that the agreement becomes effective on January 1, 1998. *Morrison*, 517 F.3d at 251. However, if the Distributors did not want to be bound by the new arbitration agreement, they had four months to choose whether or not to renew their distributor agreement before January 1, i.e. if they do not renew their agreement, they will not be bound by the new arbitration provision. *Id.* at 251. The Distributors filed suit on January 8, 1998, shortly after the new arbitration provision went into effect, and Amway moved to stay the suit pending arbitration. *Id.* at 251.

There is no dispute that all Distributors renewed their agreements and that there was a written arbitration policy in effect beginning January 1, 1998. *Id.* at 253. However, unlike in *Halliburton*, where the plaintiff's claims accrued *after* the arbitration agreement was implemented,

*see Halliburton*, 80 S.W.3d at 567, the plaintiff's claims in *Morrison* arose from events that occurred many months *before* the arbitration provision went into effect. *Id.* at 253. The Distributors rightfully argued the agreement was illusory because Amway "was attempting to amend the arbitration provisions so that the changes would apply retroactively as to disputes, such as those involved here, and of which Amway was aware, and that arose out of events occurring prior to such amendment." *Id.* at 253-254. The Fifth Circuit agreed with the Distributors and found that the agreement was illusory for two reasons: (1) Amway had the power to unilaterally amend it without providing its employees with advance notice, and (2) application of such amendments was not limited to only prospective claims. Put simply, "[t]here are no *Halliburton*-type savings clauses which preclude application of such amendments retroactively, meaning, to disputes which arose (or of which Amway had notice) prior to the amendment." *Id.* at 257.

The Fifth Circuit decided *Carey v. 24 Hour Fitness*, four years after their decision in *Morrison*. 669 F.3d at 202. In *Carey*, the arbitration agreement at issue allowed the employer, 24 Hour Fitness, "to revise, delete, and add to the employee handbook. Any such revisions…will be communicated through official written notices." *See Carey*, 669 F.3d at 204. Carey argued the agreement was illusory "because 24 Hour Fitness retained the right to unilaterally amend the agreement." *See id.* at 204. On the other hand, 24 Hour Fitness argued the agreement was valid because any "change in terms would not become binding upon Carey until he (1) received notice of that change and (2) accepted the change by continuing his employment." *Id.* at 206. The court disagreed with 24 Hour Fitness and again relied on *Halliburton*:

> "Nowhere in [the court's discussion in *Halliburton* did they] suggest that notice and acceptance of the change was sufficient to answer [the question of whether the arbitration agreement was illusory,] or even that it factored into the inquiry at all. Instead, ***the court's analysis of whether the agreement was illusory dealt exclusively with the savings clause preventing any changes from having retroactive effect …. which is the critical inquiry for determining whether an agreement is illusory***."

*See id.* at 207 (emphasis added). After holding that the arbitration agreement at issue was illusory, the court further explained,

> "*Halliburton* held that the arbitration agreement at issue was not illusory because Halliburton could not avoid its promise to arbitrate by amending the provision or terminating it altogether. Thus, the fundamental concern driving this line of case law is the unfairness of a situation where two parties enter

into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it. *Requiring notice alone does not fully address this concern*: if an employer provided for 10–day notice of any change to its arbitration provision, this could still arguably allow it to avoid its promise to arbitrate as to claims that were already in progress, unless there were some provision preventing changes from applying to in-progress disputes or disputes that arose prior to the notice**."**

*Id.* at 209 (emphasis added) ("Both *Torres* and *Morrison* held that notice is insufficient when retroactive amendment is possible.").[5] Since the arbitration agreement in *Carey* did not contain a *Halliburton*-type savings clause prohibiting retroactive application, unilateral modifications made by 24 Hour Fitness to the arbitration agreement could presumably apply to "in-progress disputes or disputes that arose prior to the notice;" thus, the court held that the arbitration agreement was illusory and unenforceable. *Id.* at 209-10.

In determining whether an agreement to arbitrate is illusory, the Fifth Circuit has established the following test (the "*Lizalde* Test"):

> A promisor retaining unilateral power to modify or terminate an agreement does not make that agreement illusory "so long as that power (1) extends only to prospective claims … "and [2] so long as advanced notice to the [promisee] is required before [the modification or] termination is effective.[6]

*Lizalde*, 746 F.3d at 226 (citing *Halliburton*, 80 S.W.3d at 569-70). This Test is a restatement of the two *Halliburton*-type savings clauses (requiring advance notice of any changes and application of such changes must be strictly limited to only prospective claims). *See Lizalde*, 746 F.3d at 226. The elemental structure of the *Lizalde* Test, combined with the court's use of the word "and" in between the second and third prongs indicates that the Fifth Circuit did not intend for these elements to be treated as recommendations. Rather, they are necessary elements; the lack of which is fatal and must necessarily convert an otherwise valid contract into an illusory one. *Nelson*, 815 F.3d at 195; *Lizalde*, 746 F.3d at 226. The *Lizalde* Test was reaffirmed by *Nelson*, 815 F.3d at 195 (5th Cir. 2016). In *Nelson*, the arbitration provision there allowed the defendant to retain unilateral power to change the agreement; therefore, the court looked to see if the agreement

---

[5] Mentioning *Torres v. S.G.E. Management, LLC*, 397 Fed.Appx. 63 (5th Cir. 2010) (unpublished opinion).

[6] The *Lizalde* Test contains three prongs, but since the Notice and Prospective Claims prongs are most relevant here, the second prong ("applies equally to both the employer's and employee's claims") will not be discussed.

contained the necessary *Halliburton*-type savings clauses. *Nelson*, 815 F.3d at 195. After applying the *Lizalde* Test, the court found that the agreement failed to meet the advanced notice prong because it states that any changes to the agreement would become effective "immediately upon notice to the employees." *Id.* Thus, the court held, the arbitration agreement was illusory and unenforceable because it failed to include a *Halliburton*-type savings clause requiring advanced notice of any changes. *Id.*

2.   **PayPal's arbitration agreement fails the Prospective Claims prong of the *Lizalde* Test because it expressly grants retroactive application as to disputes that "*have arisen*"**

"A *Halliburton*-type savings clause is insufficient unless it provides *both* advance notice and a limitation to only prospective claims." *Nelson*, 815 F.3d at 195 (emphasis in original). *Nelson's* concise rephrasing of the *Lizalde* Test neatly and accurately states the fundamental rule of *Halliburton* as it has been interpreted and applied by *Morrison, Carey, Lizalde,* and *Nelson*. *Nelson*, 815 F.3d at 195 ("[H]aving carefully reviewed case law from our circuit and Texas courts, we are convinced that *Lizalde's* three-part test remains an accurate statement of Texas law."). This rule governs the outcome of Defendants' Motion to Compel Arbitration. Under this line of cases, prospective application of a contract change necessarily excludes claims and disputes that have accrued or are known to the defendant before the amendment was made. *See Peleg*, 204 Cal.Rptr.3d at 62. PayPal's arbitration agreement satisfies the advance notice limit, but it lacks a limitation that applies changes to "only prospective claims." The agreement is therefore illusory under *Nelson, Lizalde, Carey, Morrison,* and *Halliburton*.

PayPal's arbitration agreement provides in relevant part[7]

> …you and we agree that if we make any amendment to this Agreement to Arbitrate…in the future, that amendment shall not apply to any claim that was filed in a legal proceeding against PayPal prior to the effective date of the amendment. *The amendment shall apply to all other disputes or claims … that have arisen or may arise between you and PayPal.*

*See* Orig. Pet. 59-62, App. 062, (Ex. A) (emphasis added). The italicized sentence above by itself makes the agreement illusory and unenforceable because the phrase "The amendment shall apply to all claims that have arisen" clearly authorizes PayPal to apply changes retroactively to disputes

---

[7] The agreement does contain a 30-day advance notice, so Maynard does not dispute this requirement.

that "have arisen" in the past. By way of comparison, a *Halliburton*-type savings clause requires express language limiting application of such changes "only to prospective claims." *Lizalde*, 746 F.3d at 226; *cf. Ruiz v. AH 2005 Mgmt., L.P.*, EP-17-CV-197-PRM, 2017 WL 4639702, at \*3 (W.D. Tex. Oct. 13, 2017) (holding the following as valid and not illusory "Such amendment or discontinuation *will apply only prospectively* and *will not affect … claims that have arisen before notice of the change or discontinuation*.") (emphasis added). Since PayPal's arbitration agreement fails to satisfy the "prospective claims" prong of the *Lizalde* Test, the agreement is illusory and unenforceable. *See Nelson*, 815 F.3d at 195; *Lizalde*, 746 F.3d at 226. Therefore, Defendants' Motion to Compel Arbitration must be denied.

Additionally, the first sentence also fails the *Lizalde* Test. The sentence starts off well and reads, "[Y]ou and we agree that if we make any amendment to this Agreement to Arbitrate, that amendment shall not apply . . ." If you add the *Halliburton* clause at the end, the clause would easily satisfy the "prospective" prong of the *Lizalde* Test. For example:

> "[Y]ou and we agree that if we make any amendment to this Agreement to Arbitrate, that amendment shall not apply … <u>to a dispute of which [Halliburton] had actual notice on the date of the amendment or as to disputes which arose prior to the date of termination</u>."

*Halliburton*, 80 S.W.3d at 570 (emphasis added). Now, going back to the first sentence:

> "[Y]ou and we agree that if we make any amendment to this Agreement to Arbitrate, that amendment shall not apply … <u>to any claim that was filed in a legal proceeding against PayPal prior to the effective date of the amendment</u>."

*See* Orig. Pet. 59-62, App. 062, (Ex. A) (emphasis added). This side-by-side comparison should leave no doubt that PayPal's version deviates far too much from *Halliburton* to be considered a valid *Halliburton*-type savings clause. Compare the PayPal/*Halliburton* hybrid above that precludes any possibility that a change in the agreement would apply retroactively as to disputes that existed prior to such amendment, with the actual PayPal clause at issue that offers no such protection. While it may true that a user can invoke certain protections only after they file a lawsuit against PayPal, the action of filing suit can't seriously be considered as valid substitute for a *Halliburton*-type savings clause; nor could it satisfy the *Lizalde* Test. *Halliburton* and *Lizalde* have always placed the burden of including a proper savings clause in an arbitration agreement squarely on the shoulders of the drafter. Here, however, PayPal has deceptively shifted this burden onto its users, but only as to those claims that are filed. All other disputes and claims are

subject to an arbitrary and unrealistic 30-day notice which operates as a statute of limitations, which would no doubt be invalid as applied to certain statutory rights. *See Peleg*, 204 Cal.Rptr.3d at 58. At any rate, the United States District Court, Southern District of Texas recently held that a very similar agreement to this one was illusory and unenforceable. *See Presta v. Omni Hotels Mgmt. Corp.*, 4:17-CV-0912, 2017 WL 3038219, * 3 (S.D. Tex. July 18, 2010).

In *Presta*, the agreement stated that any modification or revocation to the arbitration agreement would not apply to any claim that has already been submitted under this Program. *Presta*, 2017 WL 3038219 at 1. Presta argued that the agreement was illusory because "Omni has the unilateral ability to modify or revoke [the Arbitration Agreement] after a dispute arises, but before a claim is filed with the Judicial Arbitration Mediation Services ("JAMS")[,]" as was required for a claim to be submitted "under the Program." *Presta*, 2017 WL 3038219 at 5. Omni argues that *Halliburton* did not hold that a savings clause must track, or be as broad as, the savings clause at issue before that court, and that the savings clause in the parties' Arbitration Agreement—is "prospective" under the first prong of Lizalde. *Presta*, 2017 WL 3038219 at 5. The court held the agreement was illusory and unenforceable, reasoning that Arbitration agreements fail to meet Halliburton's requirements solely because the agreement contains no express limitation on an employer's power to make unilateral changes to an arbitration agreement that have retroactive effect, meaning changes that could strip the right of arbitration from an employee, or changes that apply to disputes which had arisen and of which the employer had notice prior to the change." *Presta*, 2017 WL 3038219 at 6.

The court held that because the savings clause in the arbitration agreement permits Omni to alter the terms of the Arbitration Agreement with respect to claims of which Omni is aware but which are not formally brought under the JAMS program (i.e. retroactively), the agreement is illusory in violation of Texas law. *Presta*, 2017 WL 3038219 at 6; *cf. Ruiz*, 2017 WL 4639702 at *3 (Not illusory where agreement stated "[Employer] reserves the right to discontinue, amend or revise this Policy on 30 days' notice to you by notifying you of the proposed amendment or discontinuation. ***Such amendment or discontinuation will apply only prospectively and will not affect any pending arbitration claim or claims that have arisen before notice of the change or discontinuation***.).

And finally, PayPal's arbitration agreement is illusory because it lacks an express *Halliburton*-type savings clause that requires all changes to be made prospectively. Consider the following factually similar cases from other jurisdictions that are in accord with the Fifth Circuit precedent and Texas law. *See e.g., Keanini v. United Healthcare Services, Inc.*, 33 F. Supp. 3d 1191,

1199 (D. Haw. 2014) (The court, relying on the Fifth Circuit's decision in *Morrison* and *Peleg*, held that the arbitration agreement was illusory. The court reasoned, "It is little comfort to an employee that the United Healthcare Arbitration Policy requires notice of amendments and a delayed effective date… because United Healthcare retains the ability to amend or terminate the Arbitration Policy even with respect to claims it knows have accrued, the Arbitration Policy is illusory notwithstanding its amendable provisions concerning notice, effective date, and nonapplicability to existing arbitration demands.); *Flemma v. Halliburton Energy Services, Inc.*, 303 P.3d 814 (N.M.2013) (the court concluded that an arbitration agreement permitting the employer to amend on 10 days' notice, except as to disputes that were filed in a legal proceeding, was … illusory under New Mexico law); *Peleg*, 140 Cal. Rptr. 3d at 63 (The Agreement fails because it exempts only filed claims—it does not go far enough. The Agreement should also exempt claims that have accrued or are known to the employer that are not filed within 30 days); *Reyes v. United Healthcare Services, Inc.*, CV 14-1741-DOC JEMX, 2014 WL 3926813, at *3 (C.D. Cal. Aug. 11, 2014) (Arbitration clause was illusory that stated, "all arbitrations shall be conducted in accordance with the Policy in effect on the date the Corporate Employee Relations Department receives the Demand for Arbitration. In other words, modifications may apply to claims already accrued or known to United Health, provided that the claim was not *filed* until after the 30–day notice period.").

## III.   CONCLUSION

This Court should deny Defendants' Motion to Compel Arbitration for two reasons. First, the evidence PayPal has set forth does not sufficiently demonstrate that Maynard agreed to arbitrate his claims against PayPal. *See Janvey*, 847 F.3d at 240. Second, the arbitration agreement is illusory and unenforceable because PayPal retains the unilateral power to modify or terminate the agreement, and there is no savings clause that expressly limits application of those changes "only to prospective claims."

Maynard's Original Agreement with PayPal did not contain an arbitration agreement. So PayPal must prove that one or more terms in the Original Agreement would have somehow alerted Maynard to the fact he might someday be deemed to have agreed to give up his right to a jury trial. Thus, the burden falls onto PayPal to show that he did so agree." Customers cannot assent to future changes of which there was no reason to know would come. Under Texas law, the party seeking to enforce an agreement to arbitrate must establish the same elements required for other valid contracts: offer (notice), acceptance, mutual assent, execution and delivery with the

intent that it be mutual and binding, and consideration. Generally speaking, a party can't unilaterally change the terms of a contract without obtaining the other party's consent. Defendants have offered no evidence to prove that they have sufficiently met this burden, thus, PayPal had no authority to unilaterally add the arbitration agreement to the Original Agreement, and Maynard is not bound by it.

A court's analysis of whether an arbitration agreement is illusory must look exclusively to whether the agreement contains a savings clause that prevents any changes from having retroactive effect. Here, there is no savings clause that expressly limits application of PayPal's amendments only to prospective claims as required by *Halliburton, Nelson,* and *Lizalde*. This is a clear violation of the "prospective application" prong of the test in *Lizalde* and is sufficient by itself to render the agreement illusory. Further, the agreement expressly states that any amendment not filed in a legal proceeding "shall apply to all other disputes or claims … *that have arisen* … between you and PayPal." This language expressly allows PayPal to apply a modification retroactively, which is precisely what *Halliburton, Morrison, Carey, Lizalde,* and *Nelson* expressly prohibit. *See also Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, 882 F.3d 574, 578 (5th Cir. 2018) (Courts cannot imply or alter terms that contradict the express contract language.). Further, it shows that PayPal expects and intends to enforce changes made to their agreement and apply them retroactively as to disputes that they had actual knowledge of prior to making the change. Because PayPal's arbitration agreement fails the prospective application prong of the *Lizalde* test (amendments don't extend only to prospective claims), and where there is no express *Halliburton*-type savings clause that can save the agreement from being declared illusory and unenforceable, the Court must deny Defendants' Motion to Compel.

Both *Torres* and *Morrison* held that notice is insufficient when retroactive amendment is possible. *Carey*, 669 F.3d at 207. Thus, PayPal's 30-day notice requirement cannot prevent the agreement from being declared illusory when the clear language of the agreement allows for such retroactive amendment: if an employer provided for 30–day notice of any change to its arbitration provision, this could still arguably allow it to avoid its promise to arbitrate as to claims that were already in progress, unless there were some provision preventing changes from applying to in-progress disputes or disputes that arose prior to the notice. Additionally, a party claiming that an agreement to arbitrate is illusory need not prove that retroactive modification has been attempted. *See Harris v. Blockbuster*, 622 F. Supp. 2d 396, 399-400 (N.D. Tex. 2009); *Peleg*, 140 Cal. Rptr. 3d at 65 ("An arbitration agreement may be illusory regardless of whether an employer has *exercised* its unilateral right to amend, modify, or terminate the agreement; it is the *ability* to do so that matters.").

"Under the rules of orderliness, [district courts in Texas] are bound by *Lizalde's*" requirement that the power to amend must extend only to prospective claims, "unless a subsequent Texas appellate court has clearly rejected [the Fifth Circuit's] prior interpretation of Texas law. None have done so." *See Nelson*, 815 F.3d at 195; *Presta*, 2017 WL 3038219 at *6, n. 28 ("this Court [United States District Court, Southern District] is bound by the Fifth Circuit's interpretation of *Halliburton*.").

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2018, I electronically filed the foregoing document with the clerk of court for the United States District Court, Northern District of Texas, using the CM/ECF system, which will send notices of electronic filing to all counsel of record.

*/s/ Jeffrey R. Duffey*
**JEFFREY R. DUFFEY**