## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW MAYNARD, individually, and on behalf of Maynard Investment Group, LLC d/b/a Discount Sport Nutrition, | § § § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. 3:18-CV-0259-D |
| PAYPAL, INC. and PAYPAL HOLDINGS, INC., | § § § | |
| **Defendants.** | § § | |

## DEFENDANTS PAYPAL, INC. AND PAYPAL HOLDINGS, INC.'S BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Respectfully submitted,

**GREENBERG TRAURIG LLP**

*/s/ P. William Stark*
Jordan W. Cowman
  State Bar No. 04932800
  cowmanj@gtlaw.com
P. William Stark
  State Bar No. 24046902
  starkb@gtlaw.com
Bina B. Palnitkar
  State Bar No. 20470378
  palnitkarb@gtlaw.com
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Telephone:  (214) 665-3600
Facsimile:   (214) 665-3601

***Attorneys for Defendants PayPal, Inc. and PayPal Holdings, Inc.***

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................2

III. APPLICABLE LEGAL STANDARD ..................................................................3

IV. ARGUMENT & AUTHORITIES ........................................................................5

    A. Maynard has not asserted any claims individually and does not have standing to bring claims on behalf of DSN, a limited liability company. ..............5

    B. Plaintiff has not stated any claims against PayPal Holdings, Inc. ..........................7

    C. The Court should dismiss Plaintiff's tort claims (Counts 1, 4, 5, 6, 7, 8).............9

    D. Because Plaintiff Fails to Plead Facts Establishing the Elements of His Claims, They Should Also Be Dismissed For This Independent Reason..............10

        1. The DTPA does not apply and, even if it did, Plaintiff fails to plead all of the essential elements for a claim under the DTPA..........................10

        2. Plaintiff fails to plead all of the essential elements of breach of contract.....................................................................................................12

        3. Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing. .......................................................................13

        4. The Court should dismiss Plaintiff's conversion claim because money cannot be converted and, even if it could, Plaintiff did not plead the conversion of specific chattel. ...................................................15

        5. Plaintiff's Fiduciary Duty Claim Fails Because Defendant Does Not Owe Plaintiff Such A Duty Under The Texas Money Services Act or Otherwise. ....................................................................................16

        6. Plaintiff fails to plead fraud with particularity as required by Rule 9(b) and fails to plead all essential elements of fraud...............................19

            a. Plaintiff fails to plead fraud with particularity..............................19

            b. Plaintiff fails to plead all essential elements of fraud...................21

        7. Plaintiff fails to state a claim for gross negligence. ...................................21

        8. Plaintiff fails to state a claim for tortious interference with a sales contract.....................................................................................................23

V. REQUEST FOR RELIEF .................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Am. Bus. Fin. Servs., Inc.*,
    457 B.R. 314 (Bankr. D. Del. 2011) ................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................4, 5

*Bender v. Williamsport Area. Sch. Dist.*,
    475 U.S. 534 (1986)...................................................................................4

*Brendel v. Meyrowitz*,
    No. 3:15-CV-1928-D, 2016 WL 302282 (N.D. Tex. Jan. 25, 2016),
    *reconsideration denied*, No. 3:15-CV-1928-D, 2016 WL 1721312 (N.D. Tex.
    Apr. 29, 2016)...........................................................................................3

*Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v.
    Wachovia Bank of Delaware Nat. Ass'n*,
    No. CIV. 10-520 JBS KMW, 2011 WL 864421 (D. Del. Mar. 9, 2011)................15

*Cardoni v. Prosperity Bank*,
    805 F.3d 573 (5th Cir. 2015) .......................................................................3

*Carroll v. Fort James Corp.*,
    470 F.3d 1171 (5th Cir. 2006) ...................................................................20

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)...................................................................................6

*Chair King, Inc. v. Houston Cellular Corp.*,
    131 F.3d 507 (5th Cir. 1997) .......................................................................4

*Collins v. Morgan Stanley Dean Witter*,
    224 F.3d 496 (5th Cir. 2000) .......................................................................5

*Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*,
    879 F.3d 79 (3d Cir. 2018)........................................................................7, 8

*ECL Grp., LLC v. Mass*,
    No. 3:17-CV-2399-D, 2018 WL 949235 (N.D. Tex. Feb. 20, 2018) ......................3

*El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*,
    344 F. Supp. 2d 986 (S.D. Tex. 2004) ..........................................................10

*Herrmann Holdings LTD. v. Lucent Technologies, Inc.*,
    302 F.3d 552 (5th Cir. 2002) .....................................................................19

*Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*,
   143 F.3d 1006 (5th Cir. 1998) ...................................................................................3

*LaSalle Nat'l Bank v. Perelman*,
   82 F. Supp. 2d 279 (D. Del. 2000)............................................................................8

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) ...................................................................................4

*Lovelace v. Software Spectrum, Inc.*,
   78 F.3d 1015 (5th Cir. 1996) .................................................................................19

*Melder v. Morris*,
   27 F.3d 1097 (5th Cir. 1994) .................................................................................19

*In re Oakwood Homes Corp.*,
   340 B.R. 510 (Bankr. D. Del. 2006) ......................................................................17

*Overtime Mktg. SE, LLC v. High Performance Beverage*,
   No. 4:14-CV-434, 2015 WL 430248 (E.D. Tex. Feb. 2, 2015)...........................6, 7

*Paterson v. Weinberger*,
   644 F.2d 521 (5th Cir. 1998) ...................................................................................4

*Pinkert v. John J. Olivieri, P.A.*,
   No. CIV. A. 99-380-SLR, 2001 WL 641737 (D. Del. May 24, 2001) ...............9, 22

*Quicksilver Resources, Inc. v. Eagle Drilling, LLC*,
   792 F. Supp. 2d 948 (S.D. Tex. 2011) ...................................................................10

*Searcy v. Houston Lighting & Power Co.*,
   907 F.2d 562 (5th Cir. 1990) ...................................................................................7

*Sommers Drug Stores Co. v. Employee Profit Sharing Trust v. Corrigan*,
   883 F.2d 345 (5th Cir. 1989) ...................................................................................4

*United States v. Bell Helicopter Textron Inc.*,
   417 F.3d 450 (5th Cir. 2005) .................................................................................19

*Williams v. WMX Technologies, Inc.*,
   112 F.3d 175 (5th Cir. 1997) .................................................................................19

*Williamson v. Tucker*,
   645 F.2d 404 (5th Cir. 1981) (en banc) ...................................................................4

**State Cases**

*Alexander v. Turtur & Assocs.*,
   146 S.W.3d 113 (Tex. 2004).................................................................................11

*Allen v. El Paso Pipeline GP Co., LLC*,
   2014 WL 2819005 (Del. Ch. June 20, 2014).........................................................14

*Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*,
   963 A.2d 746 (Del. Ch. 2009), *aff'd,* 976 A.2d 170 (Del. 2009)................................7

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
   910 A.2d 1020 (Del. Ch. 2006)......................................................17

*Aspen Advisors LLC v. United Artists Theatre Co.*,
   861 A.2d 1251 (Del. 2004)..........................................................23

*B&W Sup. v. Beckman*,
   305 S.W.3d 10 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)....................11

*Barrera v. Cherer*,
   No. 04–13–00612–CV, 2014 WL 1713522 (Tex. App.—San Antonio, Apr.
   30, 2014, pet dism'd)..............................................................6

*Brown v. Bank of Galveston*,
   963 S.W.2d 511 (Tex. 1998)........................................................11

*Brown v. United Water Delaware, Inc.*,
   3 A.3d 272 (Del. 2010)............................................................22

*Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,
   752 A.2d 1175 (Del. Ch. 1999)......................................................8

*Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*,
   No. CIV.A. 98C-02-217WCC, 2002 WL 1335360 (Del. Super. Ct. June 13,
   2002)..............................................................................9

*Cruz v. Andrews Restoration, Inc.*,
   364 S.W.3d 817 (Tex. 2012)........................................................11

*Data Mgmt. Internationale, Inc. v. Saraga*,
   No. CIV.A. 05C-05-108, 2007 WL 2142848 (Del. Super. Ct. July 25, 2007) ...........9

*Facciolo Construction Co. v. Bank of Delaware*,
   514 A.2d 413, 1986 WL 17356 (Del. 1986)..........................................15

*Feldman v. Cutaia*,
   956 A.2d 644 (Del. Ch. 2007), *aff'd,* 951 A.2d 727 (Del. 2008)....................6

*Fitzgerald v. Cantor*,
   No. C.A. 16297-NC, 1998 WL 842316 (Del. Ch. Nov. 10, 1998) ......................13

*Gaffin v. Teledyne, Inc.*,
   611 A.2d 467 (Del. 1992) .........................................................21

*Goodrich v. E.F. Hutton Grp., Inc.*,
   542 A.2d 1200 (Del. Ch. 1988).................................................15, 16

*H-M Wexford LLC v. Encorp, Inc.*,
   832 A.2d 129 (Del. Ch. 2003)......................................................12

*Hauspie v. Stonington Partners, Inc.*,
   945 A.2d 584 (Del. 2008) .........................................................21

*Hecksher v. Fairwinds Baptist Church, Inc.*,
    115 A.3d 1187 (Del. 2015) ..............................................................................22

*Holliday v. Weaver*,
    410 S.W.3d 439 (Tex. App.—Dallas 2013, pet. denied) ......................................11

*Irwin & Leighton, Inc. v. W.M. Anderson Co.*,
    532 A.2d 983 (Del. Ch. 1987) .........................................................................23

*In re J.P. Morgan Chase & Co. S'holder Litig.*,
    906 A.2d 766 (Del. 2006) ................................................................................6

*J.W. Walker & Sons, Inc. v. Constr. Mgmt. Serv., Inc.*,
    No. CIV.A.7C-09034MMJ, 2008 WL 1891385 (Del. Super. Ct. Feb. 28,
    2008) ..............................................................................................9, 22

*Jardel Co. v. Hughes*,
    523 A.2d 518 (Del. 1987) ...............................................................................22

*Kuroda v. SPJS Holdings, L.L.C.*,
    971 A.2d 872 (Del. Ch. 2009).......................................9, 10, 12, 13, 15, 22, 24

*McCann v. Lucky Money, Inc.*,
    29 Cal. Rptr. 3d 437 (Cal. Ct. App. 2005) ...................................................16, 17

*Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
    854 A.2d 121 (Del. Ch. 2004).....................................................................20, 21

*Monterey S.P. Partnership v. W.L. Bangham, Inc.*
    (1989) 49 Cal.3d 454, 261 Cal. Rptr. 587, 777 P.2d 623 ......................................17

*NAMA Holdings, LLC v. Related WMC LLC*,
    No. CV 7934-VCL, 2014 WL 6436647 (Del. Ch. Nov. 17, 2014)...................13, 14

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) .............................................................................14

*O'Leary v. Telecom Res. Serv., LLC*,
    No. 10C-03-108-JOH, 2011 WL 379300 (Del. Super. Ct. Jan. 14, 2011)...........7, 8

*Poore v. Fox Hollow Enters.*,
    No. C.A. 93A-09-005, 1994 WL 150872 (Del. Mar. 29, 1994) ..............................6

*Prudential Ins. v. Jefferson Assocs.*,
    896 S.W.2d 156 (Tex. 1995) ...........................................................................11

*Scott-Douglas Corp. v. Greyhound Corp.*,
    304 A.2d 309 (Del. Super. Ct. 1973) ..................................................................6

*Senger Creek Dev., LLC v. Fuqua*,
    No. 01-15-01098-CV, 2017 WL 2376529 (Tex. App.—Houston [1st Dist.]
    June 1, 2017, no pet.).......................................................................................7

*Stephenson v. Capano Dev., Inc.*,
    462 A.2d 1069 (Del. 1983) .............................................................................20

*Strougo v. Hollander*,
  111 A.3d 590 (Del. Ch. 2015)........................................................................24

*Stuchen v. Duty Free Int'l, Inc.*,
  No. CIV.A. 94C-12-194, 1996 WL 33167249 (Del. Super. Ct. Apr. 22, 1996)....................24

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) .............................................................................6

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) ..............................................................................12

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*,
  49 A.3d 1168 (Del. 2012) ..............................................................................23

**State Statutes**

Tex. Bus. & Com. Code § 17.50(a) .....................................................................11

Tex. Fin. Code § 151.001−.860.........................................................................16

Tex. Fin. Code § 151.404...........................................................................16, 18

Tex. Fin. Code § 151.404(e), (f).......................................................................18

Tex. Fin. Code § 151.703..............................................................................18

Tex. Fin. Code § 1816.............................................................................16, 17

Tex. Fin. Code § 1816 a...............................................................................17

**Rules**

Fed R. Civ. Pro. 9(b)........................................................................1, 2, 19, 20, 21

Fed R. Civ. Pro. 12(b)(1).........................................................................1, 3, 4

Fed R. Civ. Pro. 12(b)(6).........................................................................1, 4, 19

Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(1) and (6), Defendants PayPal, Inc. ("PayPal") and PayPal Holdings, Inc. ("PayPal Holdings") (collectively, "Defendants") file their Brief and Memorandum of Law in Support of their Motion to Dismiss (the "Motion") as follows:

## I.      INTRODUCTION

Plaintiff Matthew Maynard ("Maynard"), purporting to bring claims individually and on behalf of Maynard Investment Group d/b/a Discount Sport Nutrition ("DSN") (collectively, "Plaintiff"), initiated this action against Defendants, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and six tort claims (violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), conversion, breach of fiduciary duty, fraud, gross negligence, and tortious interference with a sales contract).  Regardless of whether they are cast in contract or tort, each of Plaintiff's claims is based upon Plaintiff's allegations that Defendants wrongfully decided disputed claims under PayPal's buyer protection program against DSN in violation of the terms of the PayPal User Agreement ("User Agreement") to which PayPal Holdings, Inc. is not a party.[1]

Plaintiff's claims must be dismissed for numerous reasons.  As a preliminary matter, Maynard has not asserted any claims individually and lacks standing to bring claims on behalf of DSN, a limited liability company.  Additionally, Plaintiff has not asserted any cognizable basis for liability against PayPal Holdings, Inc.  Further, even if Maynard had standing to bring claims on behalf of DSN, which he does not, the Court should dismiss Plaintiff's tort claims. Regardless of Plaintiff's characterization, these claims are in substance ones that arise under the

---

[1]   Plaintiff attached a copy of the PayPal User Agreement to his Verified Original Petition and Application for Temporary Restraining Order and Temporary Injunction (the "Petition") that Plaintiff originally filed in Texas state court and Defendants removed to this Court.  *See* Defendants' Notice of Removal [Dkt. 1].

relationship created by the User Agreement, rely on duties allegedly created by the User Agreement, and seek damages for the alleged economic injuries arising out of the duties allegedly imposed by the User Agreement. Plaintiff cannot manufacture tort claims in a case that really alleges only breach of contract, and the tort claims should be dismissed.

Moreover, Plaintiff has failed to plead claims upon which relief could be granted under the DTPA and for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty, fraud, gross negligence, and tortious interference. Finally, Plaintiff fails to plead fraud with particularity as required by Rule 9(b). Because of these numerous defects and failures, and as detailed further herein, the Court should dismiss the Petition with prejudice.

## II.     STATEMENT OF FACTS

DSN sells vitamins and sports supplements online and makes shipments globally.[2] Plaintiff has a PayPal account that he used to facilitate payments in connection with the DSN sales that underlie and are the subject of Plaintiff's claims.[3]   The terms and conditions that govern Plaintiff's relationship with PayPal, Inc. and his use of the PayPal account are set forth in the User Agreement. Plaintiff attaches to his Petition a copy of the User Agreement upon which he bases his claims.[4]   Among other terms, the User Agreement contains a choice-of-law provision stating:

> [E]xcept to the extent inconsistent with or preempted by federal law and except as
> otherwise stated in this user agreement, the laws of the State of Delaware, without

---

[2]   *See* Petition [Dkt 1-1] at ¶ 9.
[3]   *See* Petition [Dkt 1-1] generally and at ¶¶ 9–10.
[4]   *See* Exhibit A to Petition [Dkt 1-1].

regard to principles of conflict of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal.[5]

Plaintiff's lawsuit is based upon sales DSN allegedly made to customers in India between June 2016 and June 2017.[6]  DSN claims that its customers in India were part of a fraudulent scheme and initiated "an exceedingly large number of disputes in PayPal's Dispute Resolution Center seeking refunds on their orders."[7]  DSN contends that Defendants wrongfully decided the claims in the buyers' favor and have continued to allow the buyers to make fraudulent claims against Plaintiff.[8]

Plaintiff's Petition makes the unsupported assertion that, as PayPal's parent company, PayPal Holdings "is therefore liable for the conduct of PayPal, Inc. and all of its subsidiaries"[9] and collectively defines PayPal and PayPal Holdings as "PayPal."[10]  Plaintiff fails to distinguish between the two entities; he conflates them throughout his Petition.[11]

## III.    APPLICABLE LEGAL STANDARD

The Court should dismiss the Petition pursuant to Rule 12(b)(1) or 12(b)(6) because Maynard lacks standing to bring claims on behalf of DSN, a limited liability company.  A court must dismiss a suit for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case.  *See Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Subject matter jurisdiction is

---

[5]   *See* Exhibit A to Petition [Dkt 1-1] at p. 69 (p. 39 of User Agreement).  Federal courts in Texas routinely enforce such choice of law agreements.  *See, e.g., ECL Grp., LLC v. Mass*, No. 3:17-CV-2399-D, 2018 WL 949235, at *5 (N.D. Tex. Feb. 20, 2018) (citing *Cardoni v. Prosperity Bank*, 805 F.3d 573, 581 (5th Cir. 2015)); *Brendel v. Meyrowitz*, No. 3:15-CV-1928-D, 2016 WL 302282, at *4 (N.D. Tex. Jan. 25, 2016), *reconsideration denied*, No. 3:15-CV-1928-D, 2016 WL 1721312 (N.D. Tex. Apr. 29, 2016).

[6]   *See* Petition [Dkt 1-1] at ¶ 10 and Exhibits D and H to Petition

[7]   *See* Petition [Dkt 1-1] at ¶¶ 10–11 and Exhibit D to Petition.

[8]   *See* Petition [Dkt 1-1] at ¶¶ 12–20 and Exhibit D to Petition.

[9]   *See* Petition [Dkt 1-1] at ¶ 4.

[10]  *See* Petition [Dkt 1-1] at p. 6 (p. 1 of Petition).

[11]  *See* Petition [Dkt 1-1] at ¶¶ 22–94.

missing if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area. Sch. Dist.*, 475 U.S. 534, 541–42 (1986); *Sommers Drug Stores Co. v. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989) ("[S]tanding is essential to the exercise of jurisdiction, and . . . lack of standing can be raised at any time by a party or by the court."). Therefore, when a plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action, pursuant to Rule 12(b)(1), for want of subject matter jurisdiction. *See Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir. 1997). A district court may dismiss for lack of subject matter jurisdiction based on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (en banc). A motion to dismiss based on the complaint alone presents a "facial attack" that requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998). "If sufficient, those allegations alone provide jurisdiction." *Id.*

The Court should dismiss the Petition pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V*

*(U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). While the court is required to accept as true the Petition's factual allegations, drawing all reasonable inferences in favor of the Plaintiff, mere labels, conclusions, "naked assertions devoid of further factual enhancement" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). After removing the conclusory allegations, the Petition must contain sufficient well-pleaded factual allegations to "nudge [plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## IV.    ARGUMENT & AUTHORITIES

### A.    Maynard has not asserted any claims individually and does not have standing to bring claims on behalf of DSN, a limited liability company.

Although Maynard purports to bring claims "individually, and on behalf of Maynard Investment Group, LLC d/b/a Discount Sport Nutrition,"[12] Maynard neither asserts any claims individually nor pleads any basis that would permit him to bring claims "on behalf of" a limited liability company. The only claims asserted in the Petition are based upon DSN's sales, claims asserted by DSN's customers, and PayPal, Inc.'s resolution of such claims.[13] Unsurprisingly, the DTPA demand letter sent to PayPal, Inc., attached to the Petition as Exhibit D, was sent on behalf of DSN—not Maynard individually. This confirms that all of the claims asserted belong to DSN, not Maynard.[14]

Maynard has not pled any basis that would allow him to bring claims "on behalf of" DSN. Individuals are distinct from and are not the same as the legal entities with which they

---

[12]   *See* Petition [Dkt 1-1] at p. 6 (p. 1 of Petition).
[13]   *See, e.g.*, Petition [Dkt 1-1] at ¶¶ 9–11, 15–18, 25, 32, 42–44, 66–69, 71–74, 76–80, 83, and 86–94.
[14]   *See* Petition [Dkt 1-1] at Exhibit D.

associate. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) ("The

corporate owner/employee, a natural person, is distinct from the corporation itself, a legally

different entity with different rights and responsibilities due to its different legal status" and

"[a]fter all, incorporation's basic purpose is to create a distinct legal entity, with legal rights,

obligations, powers, and privileges different from those of the natural individuals who created it,

who own it, or whom it employs."); *Overtime Mktg. SE, LLC v. High Performance Beverage*,

No. 4:14-CV-434, 2015 WL 430248, at *1, 4 (E.D. Tex. Feb. 2, 2015) (Hansmire, Overtime

Marketing, LLC's president and owner, "is not the same legal entity as Overtime Marketing,

LLC."); *Poore v. Fox Hollow Enters.*, No. C.A. 93A-09-005, 1994 WL 150872, at *2 (Del. Mar.

29, 1994); *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 314 (Del. Super. Ct. 1973);

*Barrera v. Cherer*, No. 04–13–00612–CV, 2014 WL 1713522, at *2 (Tex. App.—San Antonio,

Apr. 30, 2014, pet dism'd) ("A limited liability company is considered a separate legal entity

from its members.").[15]

Accordingly, Delaware and Texas law are both clear that individuals may not assert

claims that belong to the legal entities with which they associate. *In re J.P. Morgan Chase &

Co. S'holder Litig.*, 906 A.2d 766, 770–72 (Del. 2006) (dismissal was proper where the "the

claim for actual damages, if there is one, belongs to the corporation and can only be pursued by

the corporation . . . "); *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del.

2004); *Feldman v. Cutaia*, 956 A.2d 644, 654, 659–60 (Del. Ch. 2007), *aff'd,* 951 A.2d 727 (Del.

2008); *Barrera*, 2014 WL 1713522, at *2 ("A member of a limited liability company lacks

standing to assert claims individually where the cause of action belongs to the company."); *see*

---

[15]   While the Petition does not identify DSN's state of formation, to the extent Plaintiff would argue that Texas law applies for this issue because Maynard is a Texas resident (*See* Petition [Dkt 1-1] at ¶ 3), Texas law is also clear that DSN is a separate legal entity from Maynard.

*also Senger Creek Dev., LLC v. Fuqua*, No. 01-15-01098-CV, 2017 WL 2376529, at *13 (Tex. App.—Houston [1st Dist.] June 1, 2017, no pet.) (LLC members do not have standing to assert claims individually that belong to the LLC); *Searcy v. Houston Lighting & Power Co.*, 907 F.2d 562, 563–65 (5th Cir. 1990) (company's president, founder, and chief executive officer had no standing, individually, to assert claims belonging to the company); *Overtime Mktg.*, 2015 WL 430248, at *4 (officer or shareholder of a company, even the sole shareholder, does not have standing to sue personally for injuries owing to the company).

Because Maynard has not asserted any claims individually and lacks standing to assert claims on behalf of DSN, the Court should dismiss the Petition in its entirety.

**B.      Plaintiff has not stated any claims against PayPal Holdings, Inc.**

Plaintiff's sole stated basis for liability against PayPal Holdings is the unsupported allegation that "PayPal Holdings, Inc. is the parent company of PayPal, Inc. and holds directly or indirectly all of the assets and liabilities of PayPal, Inc.  PayPal Holdings, Inc. is therefore liable for the conduct of PayPal, Inc. and all of its subsidiaries."[16]  With the exception of the Petition's opening paragraph, Plaintiff never again mentions PayPal Holdings and, instead, conflates PayPal and PayPal Holdings by collectively defining them as "PayPal."[17]

Delaware law respects corporate formalities, absent a basis for veil-piercing.  *See Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018); *Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009), *aff'd*, 976 A.2d 170 (Del. 2009) (TABLE); *O'Leary v. Telecom Res. Serv., LLC*, No. 10C-03-108-JOH, 2011 WL 379300, at *7 (Del. Super. Ct. Jan. 14, 2011).

---

[16]    *See* Petition [Dkt 1-1] at ¶ 4.
[17]    *See* Petition [Dkt 1-1] at p. 6 ( p. 1 of Petition).

The bar to pierce the corporate veil is a high one. *See Crystallex Int'l Corp.*, 879 F.3d at 86; *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp. 2d 279, 295 (D. Del. 2000); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999); *see also O'Leary*, 2011 WL 379300, at *7. To pierce the corporate veil, a party must prove facts that demonstrate the parent company's "complete domination and control" of its subsidiary. *Wallace*, 752 A.2d at 1183–84; *O'Leary*, 2011 WL 379300, at *7. "The degree of control required to pierce the veil is exclusive domination and control to the point that [the subsidiary] no longer has legal or independent significance of its own." *Wallace*, 752 A.2d at 1184 (internal quotations and citation omitted); *O'Leary*, 2011 WL 379300, at *7; *see also Crystallex Int'l Corp.*, 879 F.3d at 86 (veil piercing is "rare, and includes situations where the subsidiary is a mere 'alter ego' of the parent"). Piercing the corporate veil under the alter ego theory requires that the corporate structure cause fraud or similar injustice. *LaSalle Nat'l Bank*, 82 F. Supp. 2d at 295; *Wallace*, 752 A.2d at 1184. "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Id.* Plaintiff pleads no facts that come anywhere close to meeting this standard.

Here, Plaintiff merely asserts that "PayPal Holdings, Inc. is the parent company of PayPal, Inc. and holds directly or indirectly all of the assets and liabilities of PayPal, Inc." Plaintiff, however, has not alleged any facts that, if taken as true, would demonstrate PayPal Holdings' "complete domination and control" over PayPal, that PayPal no longer has "legal or independent significance of its own," or that the corporate structure has caused fraud or similar injustice.

Because Plaintiff has not pled facts that, if true, would establish a basis for saddling PayPal Holdings with liability pursuant to Plaintiff's claims or justify disregarding the corporate form, the Court should dismiss all claims against PayPal Holdings.

## C.    The Court should dismiss Plaintiff's tort claims (Counts 1, 4, 5, 6, 7, 8)

The economic loss rule applies to "any kind of dispute arising from a commercial transaction where the alleged damages do no harm to a person or to property other than the bargained for item." *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, No. CIV.A. 98C-02-217WCC, 2002 WL 1335360, at *5 (Del. Super. Ct. June 13, 2002). Where the action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of some duty imposed by law, the plaintiff must sue, if at all, in contract and not in tort. *Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 889 (Del. Ch. 2009); *J.W. Walker & Sons, Inc. v. Constr. Mgmt. Serv., Inc.*, No. CIV.A.7C-09034MMJ, 2008 WL 1891385, at *1 (Del. Super. Ct. Feb. 28, 2008) (noting application to service contracts). "Even an intentional, knowing, wanton, or malicious action by the defendant will not support a tort claim if the plaintiff cannot assert wrongful conduct beyond the breach of contract itself." *Data Mgmt. Internationale, Inc. v. Saraga*, No. CIV.A. 05C-05-108, 2007 WL 2142848, at *3 (Del. Super. Ct. July 25, 2007).

Here, the gravamen of Plaintiff's DTPA, conversion, breach of fiduciary duty, fraud, gross negligence, and tortious interference claims is that Defendants allegedly (i) failed to perform as they were allegedly obligated by the terms of the User Agreement; (ii) decided claims against DSN in violation of the terms of the User Agreement; and (iii) removed money from

Plaintiff's account in violation of the User Agreement.[18]  Indeed, Plaintiff's recitation of the tort claims centers upon these allegations rather than the breach of independent legal duties imposed by law and apart from the duties imposed by contract.  *See Kuroda*, 971 A.2d at 889 ("[I]n order to assert a tort claim along with a contract claim, the plaintiff must generally allege that the defendant violated an independent legal duty, apart from the duty imposed by contract.").  Where the Petition does allege damages, it is clear they are for alleged economic injuries arising out of the duties allegedly imposed by the User Agreement, not because of the breach of some independent legal duty.[19]

Because Plaintiff's tort claims arise from obligations allegedly imposed by the User Agreement, Plaintiff cannot "bootstrap" an alleged breach of contract claim into tort claims and the Court should dismiss all of Plaintiff's tort claims.

**D.     Because Plaintiff Fails to Plead Facts Establishing the Elements of His Claims, They Should Also Be Dismissed For This Independent Reason.**

    **1.     The DTPA does not apply and, even if it did, Plaintiff fails to plead all of the essential elements for a claim under the DTPA.**

As a preliminary matter, the User Agreement, upon which Plaintiff bases his breach of contract claim, unambiguously provides that "the laws of the State of Delaware, without regard to principles of conflict of laws, will govern . . . ***any claim or dispute*** that has arisen or may arise between you and PayPal."[20]  Broad choice of law clauses such as the one contained in the User Agreement are enforced and govern both contract and tort claims.  *See Quicksilver Resources, Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 952–53 (S.D. Tex. 2011); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 988–89 (S.D. Tex. 2004).  Since Delaware

---

[18]   *See* Petition [Dkt 1-1] at ¶¶ 22–34 and 71–94.
[19]   *See* Petition [Dkt 1-1] at ¶¶ 69, 71, 74, and 94.
[20]   *See* Exhibit A to Petition [Dkt 1-1] at p. 69 (p. 39 of User Agreement) (emphasis supplied).

law applies to "any claim or dispute" between Plaintiff and PayPal, Plaintiff cannot maintain claims under Texas statutes (including Texas' DTPA) and the Court should dismiss Plaintiff's Texas DTPA claim.

Even if the Court were to apply the Texas DTPA, among other elements, to prevail on a claim for violation of the DTPA, a plaintiff must prove that the defendant's action was a producing cause of the plaintiff's damages. TEX. BUS. & COM. CODE § 17.50(a); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012). A producing cause requires that the act be both a cause-in-fact and a substantial factor in causing the plaintiff's injuries. *See Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex. 2004); *Brown v. Bank of Galveston*, 963 S.W.2d 511, 514 (Tex. 1998); *Prudential Ins. v. Jefferson Assocs.*, 896 S.W.2d 156, 161 (Tex. 1995). A producing cause is a cause that is a substantial factor in bringing about an injury and without which the injury would not have occurred. *See Holliday v. Weaver*, 410 S.W.3d 439, 443 (Tex. App.—Dallas 2013, pet. denied); *B&W Sup. v. Beckman*, 305 S.W.3d 10, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Plaintiff alleges Defendants violated the DTPA by (1) employing false, misleading, and deceptive acts and practices; (2) breaching express warranties; and (3) engaging in an unconscionable action or course of action that took advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.[21] Plaintiff has not, however, pled any facts that, if taken as true, would establish that any actions by PayPal or PayPal Holdings were a producing cause of Plaintiff's damages. By way of example only, although the Petition claims Defendants violated the DTPA by representing that (1) the Seller Protection services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not

---

[21] *See* Petition [Dkt 1-1] at ¶ 28.

have; and (2) the User Agreement confers or involves rights, remedies, or obligations, which it does not have or involve, or which are prohibited by law[22], Plaintiff fails to allege how Defendants' alleged misrepresentations regarding the seller protection program or the User Agreement caused his alleged damages.   By way of further example, while Plaintiff asserts Defendants violated the DTPA by disparaging DSN by making false and misleading representations of fact to certain of DSN's customers[23], Plaintiff does not plead how Defendants' alleged disparagement of DSN caused his alleged damages.

Simply, Plaintiff has not pled that anything either PayPal or PayPal Holdings did was both a cause-in-fact and a substantial factor in causing Plaintiff's alleged injuries.   The Court should dismiss Plaintiff's DTPA claim.

### 2.      Plaintiff fails to plead all of the essential elements of breach of contract.

To state a claim for breach of contract, a plaintiff must demonstrate (1) the existence of the contract; (2) breach of an obligation imposed by that contract; and (3) resulting damages to the plaintiff.   *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003); *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003); *Kuroda*, 971 A.2d at 883–84. The Petition fails to state a claim for breach of contract with respect to both PayPal, Inc., and PayPal Holdings, Inc. because it fails to allege that Plaintiff suffered any damages as a result of any of the alleged breaches of the User Agreement.   The Court should dismiss the claim for breach of contract.

---

[22]     *See* Petition [Dkt 1-1] at ¶ 28.
[23]     *See* Petition [Dkt 1-1] at ¶ 28.

**DEFENDANTS PAYPAL, INC. AND PAYPAL HOLDINGS, INC.'S BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS – Page 12**

**3.     Plaintiff fails to state a claim for breach of the implied covenant of good faith and fair dealing.**

Under Delaware law, the implied covenant of good faith and fair dealing inheres in every contract and "requires 'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." *Kuroda*, 971 A.2d at 888 (citing *Fitzgerald v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).   The implied covenant, however, cannot be invoked to override the express terms of the contract.   *Id*.   Moreover, rather than constituting a free floating duty imposed on a contracting party, the implied covenant can only be used conservatively to ensure the parties' "reasonable expectations" are fulfilled.   *Id*.

To state a claim for breach of the implied covenant, a plaintiff "must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Id*.; *see also Fitzgerald*, 1998 WL 842316, at *1.   General allegations of bad faith conduct are not sufficient.   *Kuroda*, 971 A.2d at 888.   Rather, the plaintiff must allege a specific implied contractual obligation and allege how the violation of that obligation denied the plaintiff the fruits of the contract.   *Id*.   Further:

> [s]ince a court can only imply a contractual obligation when the express terms of the contract indicate that the parties would have agreed to the obligation had they negotiated the issue, the plaintiff must advance provisions of the agreement that support this finding in order to allege sufficiently a specific implied contractual obligation.

*Fitzgerald*, 1998 WL 842316, at *1.   Consistent with its narrow purpose, the implied covenant is only rarely invoked successfully.   *Kuroda*, 971 A.2d at 888.

The implied covenant is the doctrine by which Delaware law cautiously supplies terms to fill gaps in the express provisions of an agreement.   *NAMA Holdings, LLC v. Related WMC LLC*,

No. CV 7934-VCL, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014) (citing *Allen v. El Paso Pipeline GP Co., LLC*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014)).  "When presented with an implied covenant claim, a court first must engage in the process of contract construction to determine whether there is a gap that needs to be filled." *NAMA Holdings*, 2014 WL 6436647, at *16; *Allen*, 2014 WL 2819005, at *10.  The question is whether the language of the contract expressly covers a particular issue (in which case the implied covenant will not apply) or whether the contract is silent on the subject (revealing a gap that the implied covenant might fill). *NAMA Holdings*, 2014 WL 6436647, at *16; *Allen*, 2014 WL 2819005, at *10.  The court must determine whether a gap exists because "[t]he implied covenant will not infer language that contradicts a clear exercise of an express contractual right." *Nemec v. Shrader*, 991 A.2d 1120, 1127 (Del. 2010); *see also NAMA Holdings*, 2014 WL 6436647, at *16.

Here, Plaintiff fails to plead a claim for breach of the implied covenant.  Among other defects, Plaintiff fails to allege any specific implied contractual obligation and how Defendants' alleged violation of that obligation denied Plaintiff the fruits of the contract.  Additionally, Plaintiff fails to advance provisions of the User Agreement that support the specific implied contractual obligation(s) Plaintiff alleges Defendants violated.  In short, Plaintiff does not allege there are gaps in the User Agreement that the implied covenant must fill, rather he pleads that Defendants breached the express terms of the User Agreement by resolving claims against DSN.[24]

The Court should accordingly dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

---

[24]  *See* Petition [Dkt 1-1] at ¶¶ 66, 68, and 69.

**4.      The Court should dismiss Plaintiff's conversion claim because money cannot be converted and, even if it could, Plaintiff did not plead the conversion of specific chattel.**

Conversion is any distinct act of dominion wrongfully exerted over the property of another, in denial of the plaintiff's right or inconsistent with it. *See Kuroda*, 971 A.2d at 889; *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1203 (Del. Ch. 1988); *Facciolo Construction Co. v. Bank of Delaware*, 514 A.2d 413, 1986 WL 17356, at *2 (Del. 1986) (TABLE). Importantly, as a general rule, money cannot be converted. *Kuroda*, 971 A.2d at 890. Although other jurisdictions have recognized a narrow exception to this general rule, Delaware has not recognized any such exception. *See Capitaliza-T Sociedad De Responsabilidad Limitada De Capital Variable v. Wachovia Bank of Delaware Nat. Ass'n*, No. CIV. 10-520 JBS KMW, 2011 WL 864421, at *3 (D. Del. Mar. 9, 2011) ("Some states recognize a narrow exception for when the money can be described or identified as a specific chattel. ***But Delaware courts have not yet recognized this exception***." (emphasis supplied)); *Kuroda*, 971 A.2d at 890; *Goodrich*, 542 A.2d at 1203 ("***No Delaware court has apparently recognized a cause of action for conversion of money, as opposed to goods***." (emphasis supplied)). Because Plaintiff alleges that Defendants converted money by removing funds from DSN's account[25], Plaintiff has failed to state a claim for conversion upon which relief can be granted, and this claim should be dismissed.

Even if Delaware had adopted the narrow exception recognized in other jurisdictions, which allows a claim for conversion of money "only when it can be described or identified as a specific chattel, but not where an indebtedness may be discharged by the payment of money generally" (*see Kuroda*, 971 A.2d at 890; *Goodrich*, 542 A.2d at 1203), Plaintiff still fails to state a valid claim here. Delaware courts have held that if the limited exception applied, "an

---

[25]   *See* Petition [Dkt 1-1] at ¶¶ 71 and 74.

action for conversion of money will lie only where there is an 'obligation to return the identical money' delivered by the plaintiff to the defendant." *Id.*  Here, Plaintiff has not described or identified any specific chattel and makes no allegation that Defendants had any obligation to return the identical money that was removed from DSN's account, nor could he.  In the absence of such allegations, even if the exception applied, Plaintiff fails to plead a claim for conversion, and the Court should dismiss this claim.

### 5.    Plaintiff's Fiduciary Duty Claim Fails Because Defendant Does Not Owe Plaintiff Such A Duty Under The Texas Money Services Act or Otherwise.

Plaintiff's breach of fiduciary duty claim is founded entirely on the Texas Money Services Act (TEX. FIN. CODE §151.001–.860):

> Sec. 151.404 of the Money Services Act states that Defendants, as licensed MSB's, "shall hold in trust all money received for a transmission."  And a "trust resulting from the license holder's actions is in favor of the persons to whom the related money transmission obligations are owed."  As trustee of said funds, Defendants have certain fiduciary duties owed to the Plaintiff related to such money transmissions.[26]

Plaintiff relies upon the Money Services Act's "trust" language to create Defendants' alleged fiduciary obligations.  Although Texas courts do not appear to have addressed this novel approach, a California court of appeals rejected a similar attempt to assert a breach of fiduciary duty claim based upon similar language contained in California's Money Transmission Law. *McCann v. Lucky Money, Inc.*, 29 Cal. Rptr. 3d 437 (Cal. Ct. App. 2005).  The appeals court affirmed the district court's dismissal, finding that no fiduciary duty existed in a purely commercial transaction. *Id*. at 449–50.

> [Plaintiff] McCann's "trust" arguments are based on Financial Code section 1816, which provides funds received by the money transmitter from a customer "for transmission to a foreign country shall constitute trust funds owned by and

---

[26]    *See* Petition [Dkt 1-1] at ¶ 73.

belonging to the person from whom they were received until such time as directions have been given by the licensee or its agents for payment abroad of the remittance and funds provided for such payment."

We agree with McCann that under the plain language of Financial Code section 1816 a customer's transmission monies are trust funds. But we do not think that means what McCann thinks it means. Courts have aptly noted in the context of deeds of trust that, "'Just as a panda is not a true bear, a trustee of a deed of trust is not a true trustee.' [Citation.]" (*Monterey S.P. Partnership v. W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 462, 261 Cal. Rptr. 587, 777 P.2d 623.) The same can be said here, for ***although the customer's transmission monies are trust funds, that does not make the money transmitter a true trustee***.

*Id*. at 449 (emphasis supplied). The Court noted that generally there are no fiduciary duties in purely commercial situations and held:

The only common sense meaning that can be ascribed to the "trust fund" language of Financial Code section 1816 is that . . . the transmission funds are deemed trust funds so as to protect them from general creditors of the money transmitter. ***The language certainly does not create the kind of broad fiduciary duties McCann asserts***.

*Id*. (emphasis supplied).

*McCann*'s analysis is directly applicable to the Texas Money Services Act's "trust" language. Delaware law, like California's, recognizes that commercial parties operating at arm's-length, like Plaintiff and Defendants, generally are not in a fiduciary relationship. *See In re Oakwood Homes Corp*., 340 B.R. 510, 519 (Bankr. D. Del. 2006); *In re Am. Bus. Fin. Servs., Inc.*, 457 B.R. 314, 321 (Bankr. D. Del. 2011). This is further reinforced by the express language of the User Agreement, which provides "[o]ur relationship with you under this user agreement is as a payment service provider, and PayPal is an independent contractor for all purposes. ***PayPal is not your agent or trustee***."[27]

---

[27]   *See* Petition [Dkt 1-1] and Exhibit A to Petition [Dkt 1-1] at p. 70 (p. 40 of User Agreement) (emphasis supplied). Delaware courts have consistently held "[w]hen the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning." *See, e.g., Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

Further, the express language of Texas Finance Code § 151.404, upon which Plaintiff relies to create Defendants' alleged fiduciary obligations, evidences the legislature's intent in using "trust" language was to protect funds from general creditors, not to create the sort of broad fiduciary duties Plaintiff asserts.  The final two subsections of Section 151.404 provide:

> (e)  If the commissioner revokes a license holder's license under Section 151.703, all money held in trust by the license holder . . . is assigned to the commissioner for the benefit of the persons to whom the related money transmission obligations are owed.

> (f)  Money of a license holder or authorized delegate impressed with a trust under this section may not be considered an asset or property of the license holder or authorized delegate in the event of bankruptcy, receivership, or a claim against the license holder or authorized delegate unrelated to the license holder's or delegate's obligations under this chapter.

TEX. FIN. CODE § 151.404(e), (f).  As with the California Money Transmission Law, the "trust" language of the Texas Money Services Act does not create the sort of broad fiduciary obligations that Plaintiff asserts and which are expressly disclaimed in the User Agreement.  In any case, this suit is not about whether PayPal fulfilled its obligation to complete a money transmission to Plaintiff as requested by a third party.  That is not in dispute.  PayPal's decisions with respect to claims asserted by DSN's customers after money had been transmitted to Plaintiff is what is at issue, and the Texas Money Services Act has no bearing on that question.  Defendants do not owe Plaintiff any fiduciary obligations, and the Court should dismiss Plaintiff's breach of fiduciary duty claim.

6.   **Plaintiff fails to plead fraud with particularity as required by Rule 9(b) and fails to plead all essential elements of fraud.**

a.   **Plaintiff fails to plead fraud with particularity.**

Plaintiff fails to meet Rule 9(b)'s pleading requirements.  Notably, the factual allegations underling Plaintiff's fraud claim fail to identify the "who, what, when, where, and how" of the alleged fraudulent misrepresentations.

Dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim.  *See Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).  Rule 9(b) requires claims for fraud to be pleaded with particularity.  FED. R. CIV. P. 9(b).  The particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud.  *United States v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).  At a minimum, Rule 9(b) requires the plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent. *Herrmann Holdings LTD. v. Lucent Technologies, Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002); *see also Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).  In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).  Despite these clear, unequivocal standards, the Petition fails to identify the speaker(s) or set forth when and where any alleged misrepresentations were made, to whom certain of the alleged misrepresentations were allegedly made, or how they were allegedly made.[28]

---

[28]   *See* Petition [Dkt 1-1] at ¶¶ 75–84.

To the extent Plaintiff asserts fraud by non-disclosure[29], Plaintiff must allege that (i) PayPal and PayPal Holdings each deliberately concealed a material fact or were silent in the face of a duty to speak; (ii) PayPal and PayPal Holdings each intended to induce Plaintiff to take some action by their concealment or silence; and (iii) Plaintiff suffered an injury as a result of acting on PayPal's and PayPal Holdings' nondisclosures.  *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 154 (Del. Ch. 2004).  When a plaintiff alleges fraud by omission of facts, "Rule 9(b) typically requires the claimant to plead the type of facts omitted, the place in which the omissions should have appeared, and the way in which the omitted facts made the representations misleading."  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006) (quotations and citations omitted).

The Petition fails to satisfy Rule 9(b)'s heightened pleading requirements for fraud by non-disclosure.  Foremost, Plaintiff fails to plead any facts that would impose any duty on either PayPal or PayPal Holdings to disclose to Plaintiff (or anyone else) the information allegedly withheld.  Additionally, the Petition fails to identify the place in which any of the alleged omissions should have appeared and fails to set forth how, when, and where PayPal and PayPal Holdings each should have disclosed such information.  The Petition never alleges why the allegedly omitted information was material or how the omission of such information made any representations by PayPal and PayPal Holdings misleading.  Furthermore, the Petition fails to identify who it was at PayPal and PayPal Holdings that allegedly failed to turn the information over to Plaintiff.  Because the non-disclosure allegations in the Petition also fail to meet Rule

---

[29]   Plaintiff claims that Defendants "withheld information regarding Buyer accounts that they knew were committing criminal acts against Plaintiff.  Defendants repeatedly omitted such material facts within their knowledge because they know that Plaintiff is ignorant of such facts and that he does not have an equal opportunity to discover the truth."  *See* Petition [Dkt 1-1] at ¶ 82.

9(b)'s pleading requirements, the Petition fails to plead fraud with particularity as required by Rule 9(b), and the Court should dismiss Plaintiff's fraud claim.

### b.   Plaintiff fails to plead all essential elements of fraud.

Among other elements, to prevail on a claim for fraud, Plaintiff must prove that (1) PayPal and PayPal Holdings each intended to induce Maynard to act or to refrain from acting; (2) Maynard acted or failed to act in justifiable reliance upon the representation; and (3) Maynard was damaged as a result of such reliance.  *See Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586–87 (Del. 2008); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992); *Metro Commc'n Corp. BVI*, 854 A.2d at 144.

Although Plaintiff alleges that "Defendants intended for Plaintiff to rely on such misrepresentations and Plaintiff did in fact rely on such misrepresentations to his detriment,"[30] Plaintiff fails to plead any facts to support these conclusory allegations.  Plaintiff has not pled any facts that would show, if they were true, that PayPal and PayPal Holdings each intended to induce Plaintiff to do or refrain from doing anything or that Plaintiff did or refrained from doing anything in reliance upon the alleged misrepresentations—much less in justifiable reliance.  Further, Plaintiff has not pled any facts to support the conclusion that he was damaged as a result of his alleged reliance.  The Court should dismiss the fraud claim on this basis as well.

### 7.   Plaintiff fails to state a claim for gross negligence.

Plaintiff's claim for gross negligence alleges only, "[a]t the very least, Defendants' conduct constitutes gross negligence, in that Defendants had actual, subjective awareness of the

---

[30]   *See* Petition [Dkt 1-1] at ¶ 80.

harm their actions were inflicting on the Plaintiff, but nevertheless proceeded with conscious indifference to Plaintiff's rights, safety, and his welfare."[31]

Gross negligence is a higher level of negligence representing an extreme departure from the ordinary standard of care that signifies more than ordinary inadvertence or inattention. *See Hecksher v. Fairwinds Baptist Church, Inc.*, 115 A.3d 1187, 1199 (Del. 2015); *Brown v. United Water Delaware, Inc.*, 3 A.3d 272, 276 (Del. 2010). The Delaware Supreme Court has compared gross negligence with criminal negligence as defined in the Delaware Criminal Code, characterizing the applicable standard as the failure "to perceive a risk . . . of such nature that failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987).

Here, Plaintiff has not pled any facts to support the conclusory allegation of gross negligence. As a preliminary matter, Plaintiff has not plead any facts that would show, if they were true, that Defendants owed Plaintiff any independent legal duty of care beyond the obligations imposed under the User Agreement (*see* Section IV(C), above). Because Plaintiff has not alleged any duty of care independent of the User Agreement's contractual duties, Plaintiff must sue in contract, not tort. *Pinkert*, 2001 WL 641737, at *5; *Kuroda*, 971 A.2d at 889; *J.W. Walker & Sons*, 2008 WL 1891385, at *1.

Further, Plaintiff has not pled any facts that would show that Defendants' conduct constituted an extreme departure from the ordinary standard of care to such a degree that it signified more than ordinary inadvertence or inattention or that Defendants failed to perceive a risk of such nature that their failure to perceive it constituted a gross deviation from the standard of conduct that a reasonable person would observe in the situation. To the contrary, Plaintiff's

---

[31]   *See* Petition [Dkt 1-1] at ¶ 83.

lawsuit and allegations are centered upon mere alleged breach of contract (*see* Section IV(C), above).

The Court should dismiss Plaintiff's claim for gross negligence.

### 8.      Plaintiff fails to state a claim for tortious interference with a sales contract.

The elements of a tortious interference claim are:   (1) a contract; (2) about which defendant knew; (3) an intentional act that is a significant factor in causing the breach of such contract; (4) the act was without justification; and (5) it caused injury.  *WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012); *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265–66 (Del. 2004).  A critical question when faced with a tortious interference claim is what did the defendants do to bring about the third-party's breach?  *See Irwin & Leighton, Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).

The answer here is that Defendants did nothing to bring about any breaches of the agreements between DSN and its customers.  Plaintiff's tortious interference claim is not based on anything Defendants allegedly did that caused DSN's customers to breach their agreements with DSN.  Rather, the Petition alleges that Defendants "refused to acknowledge Plaintiff's rights under the Contract [with DSN's customers]"[32] and "failed to honor, much less acknowledge, Plaintiff's Contract with [DSN's] Buyers and its relevant shipping policies."[33] Plaintiff claims that DSN's customers breach their contracts with DSN by:

- Not notifying DSN of any non-delivery or damaged items within sixty days after paying for their order;

- Not attempting to first resolve the matter directly with DSN prior to filing a dispute or Claim with PayPal, the Buyer's credit card company, or their banking institution; and/or

---

[32]   *See* Petition [Dkt 1-1] at ¶ 87.
[33]   *See* Petition [Dkt 1-1] at ¶ 91.

- Claiming that a product was damaged and refusing to submit photographic evidence of the damage and return the damaged items to DSN.[34]

Far from causing any of these alleged breaches by DSN's customers, Plaintiff's Petition claims that *after DSN's customers breached their contracts with DSN*, Defendants refused to enforce the terms of DSN's contracts with its customers—contracts to which Defendants were not parties.[35]  Because Defendants' allegedly wrongful conduct occurred *after* DSN's customers allegedly breached their contracts, Defendants' conduct could not have been "a significant factor in causing the breach of such contract."

Further, Plaintiff's claim is nonsensical because a stranger or non-party to a contract has no legal right to enforce it.  *See Strougo v. Hollander*, 111 A.3d 590, 597–98 (Del. Ch. 2015) ("A fundamental principle of Delaware contract law is that only parties to a contract are bound by that contract."); *Kuroda*, 2010 WL 4880659, at *3 ("Generally, only parties to a contract and intended third-party beneficiaries may enforce or be bound by that agreement's provisions, whereas a nonparty to a contract has no legal right to enforce it."); *Stuchen v. Duty Free Int'l, Inc.*, No. CIV.A. 94C-12-194, 1996 WL 33167249, at *9, 10 (Del. Super. Ct. Apr. 22, 1996). Plaintiff has not pled that either of the Defendants are third-party beneficiaries of DSN's contracts with its customers or any other basis which would require Defendants to honor or enforce the terms of DSN's contracts with its customers.

The Court should dismiss Plaintiff's tortious interference claim because it is not based upon anything Defendants allegedly did to cause DSN's customers to breach their contracts with DSN.

---

[34]   *See* Petition [Dkt 1-1] at ¶ 92.
[35]   *See* Petition [Dkt 1-1] at ¶¶ 87 and 91.

## V.        REQUEST FOR RELIEF

Defendants respectfully request that the Court grant their Motion to Dismiss in its entirety, dismiss Plaintiff's Petition and all claims asserted therein with prejudice, and grant Defendants such other and/or further relief to which they may be entitled.

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2018, I electronically filed the foregoing document with the Clerk of the Court through the CM/ECF system, which will send notices of electronic filing to all counsel of record.

*/s/ P. William Stark*
P. William Stark

**DEFENDANTS PAYPAL, INC. AND PAYPAL HOLDINGS, INC.'S BRIEF AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS – Page 25**
*SAC 442984012v7*