IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW MAYNARD, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:18-CV-0259-D |
| VS. | § | |
| | § | |
| PAYPAL, INC., et al. | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action in which the court entered a final judgment dismissing with prejudice

the actions of plaintiffs Matthew Maynard ("Maynard") and Maynard Investment Group,

LLC d/b/a Discount Sport Nutrition ("DSN"), plaintiffs move under Fed. R. Civ. P. 59(e) to

set aside the dismissal and judgment. For the reasons that follow, the court grants the motion

in part and denies it in part, subject to plaintiffs' paying defendants their reasonable

attorney's fees and costs incurred in responding to the motion.

I

In December 2017 Maynard filed suit in state court against defendants PayPal, Inc.

and PayPal Holdings, Inc. The action stems from activities surrounding Maynard and DSN's

use of defendants' merchant services (a "PayPal account") to accept online payments for a

variety of vitamins and sport nutrition supplements. Maynard alleges that defendants

knowingly allowed a fraudulent chargeback scheme in which buyers of DSN's products

would file false disputes with defendants' dispute resolution system and seek a full refund

on DSN's products months after they had received their orders. According to Maynard, defendants improperly issued full refunds to all of the buyers despite the fact that Maynard provided defendants with thousands of pages of documentary evidence that proved the disputes were without merit, and without regard for the provisions in the PayPal User Agreement ("user agreement").[1]

Both defendants were served in January 2018 and removed the case to this court in February 2018. In April 2018 defendants filed a motion to dismiss Maynard's state court petition. Maynard did not respond to the motion, despite requesting and receiving a time extension. In July 2018 the court granted defendants' motion to dismiss but also granted Maynard leave to replead, stating, *inter alia*:

> Maynard filed this case in state court, under the pleading standards that govern in that forum. He should be given an opportunity to replead under the federal pleading standards. *See, e.g., Hoffman v. L & M Arts*, 774 F.Supp.2d 826, 849 (N.D. Tex. 2011) (Fitzwater, C.J.) (granting similar relief in removed case). Accordingly, the court grants Maynard 28 days from the date this order is filed to file an amended complaint. If he fails to replead, this action will be dismissed based on defendants' April 19, 2019 motion. If he repleads, defendants may move anew to dismiss, if they have a basis to do so.

July 5, 2018 Order at 1-2. Maynard filed a first amended complaint in August 2018. Shortly thereafter, defendants moved anew to dismiss Maynard's first amended complaint. In response, Maynard moved for leave to file a second amended complaint in order to add DSN

---

[1]The user agreement is attached to plaintiffs' second amended complaint as Exhibit A.

as a plaintiff. In November 2018 the court denied defendants' motion to dismiss without prejudice and granted Maynard leave to file a second amended complaint. *See Maynard v. PayPal, Inc.*, 2018 WL 5776268, at *1, 6 (N.D. Tex. Nov. 2, 2018) (Fitzwater, J.).

The second amended complaint—now on behalf of Maynard and DSN[2]—was filed, and defendants moved again to dismiss. Plaintiffs requested, and the court granted, two extensions of time to file a response to defendants' motion such that the final deadline to respond was February 1, 2019. Despite being granted two extensions of time, plaintiffs failed to respond to defendants' motion to dismiss. The court granted defendants' motion and entered judgment in favor of defendants on February 13, 2019, holding that the second amended complaint failed to state a claim on which relief can be granted.

On March 13, 2019—28 days after the entry of judgment—plaintiffs filed a motion to alter or amend the judgment pursuant to Rule 59(e). The motion has been briefed and is now ripe for decision.

---

[2]The court notes that DSN's citizenship was not properly pleaded in the second amended complaint. Plaintiffs allege that DSN "is a foreign limited liability company organized in the state of Oklahoma and is registered to do business in the state of Texas. DSN's headquarters and principal place of business is in Dallas County, Texas." 2d Am. Compl. ¶ 1. This is insufficient. "All federal appellate courts that have addressed the issue have reached the same conclusion: like limited partnerships and other unincorporated associations or entities, the citizenship of a LLC is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) (collecting cases). Because DSN is alleged to be an LLC, plaintiffs must identify and properly allege the citizenship of all members of DSN. *See, e.g., Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam) ("To sufficiently allege the citizenships of these unincorporated business entities, a party must list the citizenships of all the members of the limited liability company[.]"). As explained *infra*, the court's partial grant of relief is contingent upon plaintiffs' remedying this defect.

## II

"The district court has considerable discretion in deciding whether to reopen a case under Rule 59(e)." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993) (footnote omitted). In deciding plaintiffs' motion, the court considers such factors as whether their failure to comply with the court's order was the result of excusable neglect, whether setting aside the judgment would prejudice the adversary, and whether plaintiffs have a meritorious claim. *See CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).[3] "These factors are not 'talismanic,' and [the court] will consider others." *Id.* (quoting *In re Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992)). The ultimate inquiry remains whether the movants show good cause. *See id.* "The district court need not consider all of these factors." *Id.*

---

[3]*CJC Holdings* actually states that the first factor is "whether the default was willful," *CJC Holdings*, 979 F.2d at 64, but it "suggest[s] that district courts should use the less subjective excusable neglect standard in the future[,]" *id.* Additionally, *CJC Holdings* discusses the existence of a meritorious defense. Because Maynard and DSN are plaintiffs rather than defendants, this element is more aptly framed in the present case in terms of whether there is a meritorious *claim* rather than a meritorious *defense*. *See Duffin v. Ocwen Loan Servicing, LLC*, 2019 WL 2341047, at *2 n.2 (N.D. Tex. June 3, 2019) (Fitzwater, J.); *Drew v. Life Ins. Co. of N. Am.*, 2009 WL 1856604, at *2 n.2 (N.D. Tex. June 29, 2009) (Fitzwater, C.J.).

III

A

The court addresses first whether plaintiffs have established excusable neglect.

Plaintiffs' motion makes no attempt to explain how or why they failed to respond to defendants' motion to dismiss plaintiffs' second amended complaint. The court is thus unable to discern whether plaintiffs' failure to respond was the result of excusable neglect, and this factor does not favor reconsideration of the court's dismissal order.

B

The court considers next whether setting aside the judgment of dismissal would prejudice defendants.

A party who secures dismissal of a case will of course "suffer some form of prejudice anytime [the party] obtains such relief and the opposing party is successful in having it set aside. The court must therefore assess whether the prejudice is *unfair*." *Artemis Seafood, Inc. v. Butcher's Choice, Inc.*, 1999 WL 1032798, at *3 (N.D. Tex. Nov. 10, 1999) (Fitzwater, J.). If the court sets aside the judgment of this case, defendants will be required to defend a lawsuit that they would otherwise not have been obligated to defend. This is not unfairly prejudicial to defendants, except to the extent they have been required to respond to plaintiffs' present motion. As in *Artemis Seafood*, the court holds that if defendants are compensated for such fees and costs, the prejudice to defendants of granting the motion is not unfair. *See Duffin v. Ocwen Loan Servicing, LLC*, 2019 WL 2341047, at *2 (N.D. Tex. June 3, 2019) (Fitzwater, J.).

C

Finally, the court addresses whether plaintiffs have a meritorious claim.[4]

Plaintiffs maintain that the facts and allegations set forth in their second amended complaint "were sufficient to state the causes of action discussed below and to survive [dismissal]." Ps. Br. 2. Defendants respond, *inter alia*, that plaintiffs abandoned their claims by failing to respond to the motion to dismiss and that the court properly dismissed plaintiffs' claims because they failed to satisfy the federal pleading standard.[5]

1

A party may abandon its claim when it fails to pursue the claim beyond the complaint. *See, e.g., Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006); *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1163-64 (5th Cir. 1983). In this case, the court does not agree with defendants' argument that plaintiffs' failure to respond to the motion to dismiss equates to total abandonment of *all* of their claims. Some of the claims, however, do appear to have been abandoned by plaintiffs as a result of the papers filed in support of the instant motion.

In their briefing, plaintiffs do not challenge the court's dismissal of the following

---

[4]*See supra* note 3.

[5]Defendants also aver that plaintiffs' use of Rule 59(e) is improper and an "attempt[ed] . . . substitute for an appeal." Ds. Br. 1. Although the court agrees that plaintiffs' motion reads as a belated response to defendants' motion to dismiss, the court will reconsider its dismissal to the extent described *infra* at § IV because the grant of a 12(b)(6) motion to dismiss is a question of law that is subject to *de novo* review.

claims: negligent undertaking; negligent hiring, training, and supervision; vicarious liability; conversion; aiding and abetting/assisting and participating; and promissory estoppel.[6] Indeed, plaintiffs implicitly acknowledge that not all of the causes of action they pleaded should have survived dismissal. *See* Ps. Br. 2 (stating "[t]he facts and allegations in Plaintiffs' Complaint were sufficient to state the causes of action *discussed below*" and proceeding to discuss select causes of action). Thus the court, in its discretion, declines to revisit its dismissal of those claims.

2

To determine whether it was error to grant defendants' motion to dismiss, the court, in its discretion, will engage in a more thorough analysis of each cause of action on which the parties disagree.

IV

A

As a threshold matter, the parties disagree as to which state's law should apply to plaintiffs' claims. Defendants maintain that, per the user agreement's choice of law clause, Delaware law applies. In their instant motion, plaintiffs suggest that the court should look

---

[6]Plaintiffs mention promissory estoppel in a footnote within their briefing in support of their breach of contract claim. *See* Ps. Br. 12 n.54. But "[p]romissory estoppel does not apply . . . where a fully integrated, enforceable contract governs the promise at issue," *SIGA Techs., Inc. v. PharmAthene, Inc.*, 67 A.3d 330, 348 (Del. 2013), and plaintiffs do not identify any extra-contractual promises that would require an application of promissory estoppel. Thus dismissal was appropriate. *See TrueBlue, Inc. v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *5 (Del. Super. Ct. Sept. 25, 2015).

to Texas law because the choice of law provision is not enforceable.

To properly analyze each disputed cause of action, the court will first determine whether Texas or Delaware law applies to plaintiffs' claims. *See Energy Coal S.P.A. v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016) ("Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry."). "A diversity court generally applies the choice-of-law rules of the state in which it sits." *InterFirst Bank Clifton v. Fernandez*, 853 F.2d 292, 294 (5th Cir. 1988) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985)). Because this court sits in Texas, it applies Texas choice of law rules. "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)).

Here, the user agreement provides:

> You agree that, except to the extent inconsistent with or preempted by federal law and except as otherwise stated in this user agreement, the laws of the State of Delaware, without regard to principles of conflict of laws, will govern this user agreement and any claim or dispute that has arisen or may arise between you and PayPal.

2d Am. Compl. Ex. A 39.[7]

---

[7]Plaintiffs attached the user agreement to the complaint; thus the court is permitted to consider the terms of the user agreement in deciding whether plaintiffs have stated a claim. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Notably, the party resisting application of a contractual choice-of-law provision bears the burden to show it does not apply. *Jimenez v. Sun Life Assur. Co. of Can.*, 486 Fed. Appx. 398, 408 (5th Cir. 2012) (per curiam); *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997). The question whether Delaware or Texas law applies to plaintiffs' claims is thus of a different variety than the question whether plaintiffs adequately pleaded their claims because it is not one that the court views in the light most favorable to the plaintiffs. Instead, it is one where plaintiffs, as the parties resisting application of a contractual choice-of-law provision, bear the burden to show that the provision did not apply. By twice failing to respond to the motion to dismiss, plaintiffs did not carry their burden at that juncture. And, even considering plaintiffs' contentions in the instant motion, plaintiffs neither argue that deciding the choice of law question on defendants' motion to dismiss was premature nor posit that Texas has a fundamental policy that would be contravened by the application of Delaware law. *See, e.g., Cardoni v. Prosperity Bank*, 805 F.3d 573, 581-82 (5th Cir. 2015) (outlining the standard that a party must satisfy to render a choice of law provision unenforceable). Rather, plaintiffs suggest that *defendants* did not "establish that the choice of law provision is reasonable or that Delaware has a sufficiently close relationship with the parties." Ps. Br. 8. But the law does not require that defendants establish anything beyond the existence of an enforceable choice of law clause. The user agreement here plainly states that Delaware law applies to any disputes arising out of the parties' relationship; thus the court applies the law mandated by the contract: Delaware law.

Additionally, the choice of law provision in the user agreement is a broad one that

applies to both tort and contract claims. "The wording of a contractual choice of law provision controls the types of claims it governs." *McDaniel v. Credit Sols. of Am., Inc.*, 2012 WL 13102240, at *6 (N.D. Tex. Mar. 21, 2012) (Godbey, J.). Texas law draws a distinction between broad choice of law clauses that may cover all claims arising from the parties' relationship and narrow choice of law clauses that do not address the entirety of the parties' relationship. *See Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990) (applying Texas choice of law rules). The choice of law provision in the user agreement provides that Delaware law "govern[s] this user agreement and any claim or dispute that has arisen or may arise between you and PayPal." 2d Am. Compl. Ex. A 39. This provision is similar to those that other courts have deemed "broad." *Compare Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F.Supp.2d 948, 952 (S.D. Tex. 2011) (concluding Oklahoma law applied to all claims between parties where choice of law clause provided: "[t]his contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of County of Cleveland, State of Oklahoma."), *and El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F.Supp.2d 986, 989 (S.D. Tex. 2004) (concluding Mexican law applied to all of plaintiffs' claims where agreement provided that Mexican law governs "[a]ll disputes which may arise in connection with the performance of this Agreement which cannot be resolved by means of negotiation[.]"), *with Caton*, 896 F.2d at 942-43 (concluding choice of law clause applied only to contract claims where it provided: "[t]his Agreement shall be construed under the laws of the State of California."). Thus the

court will apply Delaware law to each of plaintiffs' claims.[8]

B

As a result of the application of Delaware law, plaintiffs cannot maintain claims under the Texas statutes, and dismissal was proper on plaintiffs' claims for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2011 & Supp. 2018), the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2016 & Supp. 2018), the Texas Identity Theft Enforcement and Protection Act ("ITEPA"), Tex. Bus. & Com. Code Ann. §§ 521.001-.152 (West 2015 & Supp. 2018), the Texas Theft Liability Act ("TTLA"), Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (West 2019), and the Texas Money Services Act ("MSA")[9], Tex. Fin. Code Ann. §§ 151.001-801 (West 2013 & Supp. 2018). *See Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F.Supp.2d 1059, 1070 (E.D. Cal. 2006) (explaining that a valid choice of law provision selecting another state's law is grounds to dismiss a claim under the forum state's statutes).

Even if Texas law applied—or to the extent corollary Delaware statutes exists—each of the statutory claims was properly dismissed.

---

[8]Although the court determines that Delaware law is the applicable law in this case, where possible, the court will also refer to Texas law to illustrate where the result would be the same regardless of the law applied.

[9]As detailed *infra* at § IV(B)(4), the violation of the MSA was brought via a fiduciary duty claim.

1

The TDCA applies to *consumer* debts, not *commercial* debts.  *See* Tex. Fin. Code Ann. § 392.001(2), (5), & (6); *First Gibraltar Bank, FSB v. Smith*, 62 F.3d 133, 136 (5th Cir. 1995).  Plaintiffs' second amended complaint does not allege facts that allow the plausible inference that defendants sought to collect a *consumer* debt (an obligation or alleged obligation primarily for personal, family, or household purposes and arising from a transaction or alleged transaction).  *See id.*  Instead, the second amended complaint only permits the court to draw the reasonable inference that the debt in question arose from commercial transactions related to Maynard and DSN's sale of products and use of PayPal's merchant services.  Thus plaintiffs' TDCA claim was properly dismissed.

2

The only ITEPA provision enforceable by a private right of action is Tex. Bus. & Com. Code Ann. § 521.051.[10]  Section 521.051(a) provides: "[a] person may not obtain, possess, transfer, or use personal identifying information of another person without the other person's consent and with intent to obtain a good, a service, insurance, an extension of credit, or any other thing of value in the other person's name."  Tex. Bus. & Com. Code Ann. § 521.051(a).  Read in the light most favorable to plaintiffs, the second amended complaint

---

[10]Plaintiffs also reference § 521.052, which imposes a "business duty to protect sensitive personal information," but that provision of the ITEPA is only enforceable by the Attorney General.  *See generally* Tex. Bus. & Com. Code Ann. §§ 521.001-.152; *see also Patton v. Experian Data Corp.*, 2018 WL 6190349, at *9 (C.D. Cal. Jan. 23, 2018) (explaining that only one of the three sections—§ 521.051—of the ITEPA is enforceable by a private right of action).

does not state a plausible claim against defendants for such a violation of the ITEPA. For example, plaintiffs do not allege that either one of the defendants "obtain[ed], possess[ed], transfer[ed], or use[d] personal identifying information of another person" as described in § 521.051(a). At best, plaintiffs allege that defendants *benefited* from the use of information that was falsified by others, which does not state a cause of action under the ITEPA.

3

Under the TTLA, "[a] person who commits theft is liable for the damages resulting from the theft." Tex. Civ. Prac. & Rem. Code Ann. § 134.003(a); *see Bynari, Inc. v. Alt-N Techs., Ltd.*, 2008 WL 4790977, at *4 (N.D. Tex. Oct. 24, 2008) (Lindsay, J.). Theft has been defined as "unlawfully appropriating property . . . as described by" various sections of the Penal Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.002(2). Section 31.03 of the Penal Code states that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a); *see Genesco Sports Enter., Inc. v. White*, 2011 WL 6593415, at *11 (N.D. Tex. Oct. 27, 2011) (Stickney, J.). Unlawful appropriation occurs when the appropriation is without the owner's consent and the property is known to be stolen. *See* Tex. Penal Code Ann. § 31.03(b). In other words, a plaintiff claiming a violation of the TTLA "must establish: (1) the plaintiff had a possessory right to property or was the provider of services; (2) the defendant unlawfully appropriated property . . . ; and (3) the plaintiff sustained damages as a result of the theft." *Wellogix, Inc. v. Accenture, LLP*, 788 F.Supp.2d 523, 542 (S.D. Tex. 2011) (citations omitted).

In their second amended complaint, plaintiffs allege that defendants "unlawfully appropriated approximately $200,000 of Plaintiffs' funds from Plaintiffs' PayPal account." 2d Am. Compl. ¶ 153. In the motion to dismiss, defendants maintained that plaintiffs gave effective consent to PayPal's removal of funds for the transactions with DSN's customers. The court agrees that plaintiffs gave their effective consent for PayPal to "refund or reverse the transaction from [plaintiffs'] PayPal account" "[w]henever a transaction is refunded or otherwise reversed." 2d Am. Compl. Ex. A 16-18. The *fact* that a transaction was refunded or otherwise reversed is not disputed. Rather, it is the *propriety* of the refund or reversal with which plaintiffs take issue. The TTLA is not the proper mechanism under which plaintiffs may complain of the impropriety of PayPal's refunding these transactions. *See Dixon v. Bank of N.Y. Mellon*, 2014 WL 2991742, at *4-5 (N.D. Tex. July 3, 2014) (Lindsay, J.) (dismissing TTLA claim when the basis was action taken by defendants to which plaintiff consented); *Montgomery v. Wells Fargo Bank, N.A.*, 2011 WL 1375199, at *5 (N.D. Tex. Apr. 12, 2011) (Fitzwater, C.J.). Plaintiffs do not address the issue of effective consent or the applicability of the TTLA in the instant motion beyond referencing the TTLA in the choice of law discussion. Thus the court declines to revisit the dismissal of plaintiffs' TTLA claim.

4

Similarly, plaintiffs do not address their claim for breach of fiduciary duty owed under the MSA beyond referencing the MSA in the choice of law discussion. To state a claim for breach of fiduciary duty, plaintiffs must allege, *inter alia*, the existence of a fiduciary

relationship.  *See Beard Research, Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010); *accord Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. 2006, pet. denied).  Plaintiffs allege that defendants owe fiduciary duties to them under the MSA, but plaintiffs do not cite any authority that supports their position that the MSA imposes broad fiduciary duties on a money services business. Indeed, another court has determined that the fact that a licensed money services business holds money received from a transmission "in trust" does *not* mean that the money services business becomes a trustee with broad fiduciary duties actionable via a breach of fiduciary duty cause of action.  *See McCann v. Lucky Money, Inc.*, 129 Cal. App. 4th 1382, 1398 (2005) ("[A]lthough the customer's transmission monies are trust funds, that does not make the money transmitter a true trustee.").  *McCann* also explains that, generally, there is no fiduciary duty owed "in a purely commercial situation" and that transmission funds were deemed as trust funds "so as to protect them from general creditors of the money transmitter." *Id.* at 1398-99.  Delaware and Texas agree that parties engaging in an arm's length transaction are not often elevated to a fiduciary relationship.  *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 114 (Del. 2006)*; accord Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997).  Furthermore, the user agreement provides that "[PayPal's] relationship with you under this user agreement is as a payment service provider . . . PayPal is not your agent or trustee." 2d Am. Compl. Ex. A 40.  Therefore, it is not possible to draw the reasonable inference that defendants and plaintiffs were in a fiduciary relationship, and the court correctly dismissed plaintiffs' breach of fiduciary duty

claim.

5

The DTPA provides consumers a cause of action for false, misleading, or deceptive acts or practices. *See* Tex. Bus. & Com. Code Ann. § 17.50(a); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

> The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant either engaged in false, misleading or deceptive acts (i.e., violated a specific laundry-list provision of the DTPA) or engaged in an unconscionable action or course of action; and (3) the DTPA laundry-list violation or unconscionable action was a producing cause of the plaintiff's injury.

*Windle v. Synthes USA Prods., LLC*, 2012 WL 1252550, at *4 (N.D. Tex. Apr. 13, 2012) (Fitzwater, C.J.) (citing *Amstadt*, 919 S.W.2d at 649).

To state a claim under the DTPA, a plaintiff must plead sufficient facts to establish standing to bring suit as a consumer. *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 733 (N.D. Tex. 2011) (Fitzwater, C.J.). To qualify as a consumer under the DTPA, (1) the plaintiff must have sought or acquired goods or services by purchase or lease, and (2) the goods or services purchased or leased must form the basis of the complaint. Tex. Bus. & Com. Code Ann. § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981). Whether a person qualifies as a consumer under the DTPA is a question of law for the court to decide. *Olufemi-Jones v. Bank of Am., N.A.*, 2013 WL 1482544, at *2 (N.D. Tex. Apr. 10, 2013) (Lindsay, J.) (citing *Bohls v. Oakes*, 75 S.W.3d 473, 479 (Tex. App. 2002, pet. denied)).

As pleaded, and viewed in the light most favorable to plaintiffs, the second amended complaint does not state sufficient facts to establish the requirements outlined by the Supreme Court of Texas in *Cameron*. For example, plaintiffs allege in a conclusory manner that they "sought or acquired goods or services from [d]efendants." 2d Am. Compl. ¶ 95. Yet plaintiffs do not plead what "goods or services" they acquired—nor do they plead that they purchased or leased such goods or services from either defendant. Dismissal of plaintiffs' DTPA claim was thus proper.[11]

C

The court turns next to plaintiffs' claims for negligence and "breach of duty of care." Regardless whether Delaware or Texas[12] law is applied to these claims, they are both barred

---

[11]The court *sua sponte* can raise this basis for dismissing this claim, provided the procedure is fair. *See, e.g., Reneker v. Offill*, 2009 WL 804134, at *9 (N.D. Tex. Mar. 26, 2009) (Fitzwater, C.J.); *Coates v. Heartland Wireless Commc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.). The court is permitting plaintiffs to file a third amended complaint. If plaintiffs desire to attempt to cure this pleading defect, they may do so in the third amended complaint.

[12]Plaintiffs cite *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991), to support the idea that "there is a common law duty to perform [a contract] with skill, reasonableness, and faithfulness." 2d Am. Compl. ¶ 185. Although the court recognizes that independent legal duties can exist in addition to contractual ones, plaintiffs misread *DeLanney*. *DeLanney* does not stand for the proposition that any failure to perform a contract gives rise to an action for negligence in addition to an action for breach of contract. Rather, *DeLanney* explains that courts must look at both the source of the duty and the nature of the remedy to determine whether an action sounds in contact or tort. *DeLanney*, 809 S.W.2d at 494-95. Here, both the source of the duty and the nature of the remedy point to a claim that sounds only in contract. Indeed, plaintiffs do not argue that defendants breached any duty other than those created by the user agreement and thus did not state claims for negligence or "breach of duty of care." *See, e.g., Roubinek v. Select Portfolio Servicing Inc.*, 2012 WL 2358560, at *3 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.).

- 17 -

by the economic loss rule. "As a general rule under Delaware law, where an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *Pinkert v. John J. Olivieri, P.A.*, 2001 WL 641737, at *5 (D. Del. May 24, 2001); *accord Roubinek v. Select Portfolio Servicing Inc.*, 2012 WL 2358560, at *3 (N.D. Tex. June 21, 2012) (Fitzwater, J.). Plaintiffs fail to allege an independent duty outside those duties that exist pursuant to the user agreement. The second amended complaint and the instant motion confirm that the only duties of which plaintiffs' complain exist solely as a result of the user agreement. *See, e.g.,* Ps. Br. 29 ("Plaintiffs['] allegations sufficiently pleaded a claim for negligence here where Plaintiffs alleged that *Defendants did not reasonably exercise their duties under the User Agreement*." (emphasis added)). Thus the claims for negligence and breach of duty of care were properly dismissed.

## D

Plaintiffs' claim for negligent misrepresentation was also properly dismissed, despite plaintiffs' contentions to the contrary. A claim for negligent misrepresentation requires: (1) a particular duty to provide accurate information, based on the plaintiff's pecuniary interest in that information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating information; and (4) a pecuniary loss caused by justifiable reliance on the false information. *Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *17 (Del. Ch. Dec. 20, 2012); *accord Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).

Under Delaware law, a plaintiff must show that "the defendant is in the business of supplying information." *RLI Ins. Co. v. Indian River Sch. Dist.*, 556 F.Supp.2d 356, 361 (D. Del. 2008) (quoting *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg.*, 2002 WL 1335360, at *6 (Del. Super. Ct. June 13, 2002)). "To determine whether a defendant is in the business of supplying information, a court must conduct a case-specific inquiry, looking to the nature of the information and its relationship to the kind of business conducted." *Id.* Importantly, the supply of information must not be "merely ancillary [or incidental] to the sale of a product or service in connection with the sale"; it must be the "end and aim" product of a defendant's work. *Id.* at 362 (first quoting *Christiana Marine*, 2002 WL 1335360, at *7, then quoting *Del. Art Museum v. Ann Beha Architects, Inc.*, 2007 WL 2601472, at *2 (D. Del. Sept. 11, 2007)). Plaintiffs failed to allege any facts that would allow the court to draw the reasonable inference that either defendant is in the business of supplying information or that the information that defendants provided was the "end and aim" product that plaintiffs sought from defendants. *Id.* Moreover, plaintiffs plead only conclusory allegations as to what specific information was false, on which information plaintiffs justifiably relied, and fail to plead how their losses were caused by any information provided by defendants. Plaintiffs' negligent misrepresentation claim was therefore properly dismissed.

E

The court next addresses plaintiffs' claims for fraud in the inducement and fraud by nondisclosure or omission.

To state a claim for fraud in the inducement, a plaintiff must plead with particularity the following elements: (1) a false representation of material fact; (2) the defendant's knowledge of or belief as to the falsity of the representation or the defendant's reckless indifference to the truth of the representation; (3) the defendant's intent to induce the plaintiff to act or refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *Kuhn Constr. Co. v. Diamond State Port Corp.*, 2011 WL 1576691, at *9 (D. Del. Apr. 26, 2011) (citations omitted); *accord Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (detailing elements of fraud under Texas law); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998).

The allegations in the second amended complaint fail to state a claim for fraud in the inducement. For example, plaintiffs make no allegations that defendants intended to induce either Maynard or DSN to act or refrain from acting. Plaintiffs also do not allege a specific false representation of material fact. Rather, plaintiffs assert in a conclusory manner that "all of the promises [in] PayPal's User Agreement, website material, and other promotional materials" regarding fraud protection are actionable because "PayPal knows that they do not intend to take action against fraudulent users to the detriment of innocent merchants." 2d Am. Compl. ¶ 229. Such an allegation does not satisfy the requirement that plaintiffs "plead with particularity" the elements of an action for fraudulent inducement. *See Kuhn Constr.*, 2011 WL 1576691, at *9-10 (D. Del. Apr. 26, 2011).

"In addition to overt representations, fraud may also occur through deliberate concealment of material facts, or by silence in the face of a duty to speak." *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 144 (Del. Ch. 2003) (footnote omitted). Plaintiffs aver that "Defendants concealed from or failed to disclose certain material facts to Plaintiffs related to the results of their investigations in Plaintiffs' complaints that they were being defrauded by an unknown group of PayPal users." 2d Am. Compl. ¶ 215. Assuming *arguendo* that the defendants owed a duty to disclose, plaintiffs do not plead any facts that permit the reasonable inference that either DSN or Maynard took an action (or refrained from acting) in justifiable reliance on a representation made by either of the defendants. *See Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 815 (Del. Ch. 2014) ("Thus, contrary to [plaintiff's] assertion, he is required to demonstrate actual reliance to recover on his fraud by omission claim against [defendant][.]"). Nor do plaintiffs' plead damages as a result of their actual reliance. The only allegation in the second amended complaint that touches on these elements is conclusory: "Plaintiffs relied on Defendants' nondisclosure and suffered significant injuries as a result of acting or refraining from acting without knowledge of the undisclosed facts." 2d Am. Compl. ¶ 224. That allegation is nothing more than a formulaic recitation of two of the elements of fraud by omission and thus is insufficient to state a claim.

## F

The court turns next to plaintiffs' claim for tortious interference with contract.

To prove tortious interference with contract, plaintiffs must establish: (1) the existence

of a contract; (2) defendants' knowledge of the contract; (3) an intentional act that is a significant factor in causing the breach of contract; (4) that the act was done without justification; and (5) that injury resulted. *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F.Supp.2d 676, 688 (D. Del. 2010) (citing *Johnson v. GEICO Cas. Co.*, 673 F.Supp.2d 244, 250 (D. Del. 2009)); *accord Farouk Sys., Inc. v. Costco Wholesale Corp.*, 700 F.Supp.2d 780, 784 (S.D. Tex. 2010) (explaining elements of tortious interference with contract claim under Texas law).

Plaintiffs allege that they entered into sales contracts with buyers of DSN's products.[13] Plaintiffs also allege that defendants were aware of the sales contracts. Plaintiffs fail to assert, however, an intentional act that was a significant factor in causing the breach of the contract. They plead that defendants "intentionally interfered" with their sales contracts "when Defendants refused to acknowledge Plaintiffs' rights" under the sales contracts. 2d Am. Compl. ¶ 269. An alleged failure to acknowledge another contract, however, does not amount to an intentional act, much less one that is a significant factor that led to the breaches of the sales contracts by buyers. Plaintiffs other allegation —i.e., "Defendants' willful and intentional actions have allowed the Buyers to intentionally circumvent their obligations to Plaintiffs showing a conscious disregard of Plaintiffs' rights," *id.* ¶ 273—constitutes a

---

[13]Although plaintiffs appear to allege that both Maynard and DSN were parties to the "DSN Contract(s)" with buyers, the evidence attached to plaintiffs' second amended complaint belies that conclusion. The "sample DSN Contract" that is attached to the pleading as Exhibit N plainly states that the agreement is a contract between the buyer and DSN—not Maynard. 2d Am. Compl. Ex. N.

conclusory statement that does not permit the court to draw the reasonable inference that the defendants are liable for tortious interference with contract.

G

The court now turns to plaintiffs' claim that defendants violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*

Plaintiffs allege that defendants violated the EFTA by making an "unauthorized electronic transfer of funds" and/or an "incorrect electronic fund transfer" to or from the plaintiffs' user account. 2d Am. Compl. ¶ 163. The EFTA provides "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693. It protects consumers with accounts "established primarily for personal, family, or household purposes." *Frey v. First Nat'l Bank Sw.*, 602 Fed. Appx. 164, 165 (5th Cir. 2015) (per curiam) (quoting 15 U.S.C. § 1693a(2)).

Assuming *arguendo* that defendants are financial institutions, dismissal of this claim was appropriate for several reasons. For example, as a matter of law, DSN cannot bring a claim under the EFTA. EFTA liability runs only to an aggrieved "consumer," which the statute defines as a "natural person." 15 U.S.C. § 1693a(5); 12 C.F.R. § 205.2(e). "Corporations or other business entities are not 'consumers' for purposes of the EFTA." *Ironforge.com v. Paychex, Inc.*, 747 F.Supp.2d 384, 402 (W.D.N.Y. 2010) (citing *Kashanchi v. Tex. Commerce Med. Bank, N.A.*, 703 F.2d 936, 939-42 (5th Cir. 1983)). Further, the allegations in plaintiffs' second amended complaint do not permit an inference that the PayPal account in question was "established primarily for personal, family, or household

purposes."  15 U.S.C. § 1693a(2); *see supra* § IV(B)(1).  Rather, the second amended complaint only permits the court to draw the reasonable inference that the PayPal account was used for commercial transactions related to Maynard and DSN's sale of products.  Thus regardless whether the PayPal account was established by Maynard or DSN (or both), the fact that it was established primarily for business purposes precludes a viable claim for an EFTA violation, and dismissal was appropriate.

H

The court next addresses whether plaintiffs have stated a claim for breach of contract.

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiff." *H-M Wexford*, 832 A.2d at 140 (footnote omitted); *accord Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App. 2001, no pet.)).

Defendants do not challenge the existence of the user agreement or that PayPal, Inc. is bound by the terms of the user agreement.  Instead, defendants posit that plaintiffs failed to plead the existence of (1) a contract between DSN and either defendant; and (2) a contract between either plaintiff and PayPal Holdings, Inc.

Plaintiffs respond to defendants' second contention by arguing that, because the term "PayPal" is used in one section of the user agreement to refer to both PayPal, Inc. and PayPal Holdings, Inc., they have sufficiently pleaded that PayPal Holdings, Inc. is a party to the contract.  The court disagrees.  To accept plaintiffs' contention would be to ignore the first

page of the user agreement, which expressly states: "[t]his user agreement is a contract between you and PayPal, Inc. that governs your use of your PayPal account and the PayPal services." 2d Am. Compl. Ex. A 1. The court need not accept "factual allegations" that are contradicted by the express terms of an agreement that is properly considered along with the complaint when ruling on a motion to dismiss. *See, e.g., Qatalys, Inc. v. Mountain Med. Techs., Inc.*, 2015 WL 1401220, at *5 (N.D. Tex. Mar. 27, 2015) (Lindsay, J.) ("When a plaintiff's allegations in a complaint directly contradict language in a contract that formed the basis of the lawsuit, a court need not give credence to those allegations.").

As to defendants' argument regarding DSN, the court recognizes that the second amended complaint alleges that "Maynard entered into an Agreement with Defendants in July 2000." 2d Am. Compl. ¶ 57. But reading the second amended complaint in the light most favorable to plaintiffs, it is possible that Maynard entered into the user agreement on his own behalf and on behalf of DSN. The user agreement itself acknowledges that "you" may extend to a business entity, and the court will therefore interpret the provision in plaintiffs' favor. Any resolution of whether "you" refers to Maynard, DSN, or both is not a matter for a motion to dismiss (or on reconsideration of the same).

Defendants also maintain that, because the user agreement grants PayPal, Inc. discretion to adjudicate buyer disputes, its actions in exercising this discretion could not have breached the agreement as a matter of law. This argument is unavailing. The second amended complaint pleads a series of actions that, taken as true, constitute breaches of certain other obligations beyond the exercise of discretion, i.e., providing buyer protection

to buyers who did not qualify under the pertinent policies.

Defendants question whether plaintiffs adequately pleaded damages as well. But the factual content alleged by plaintiffs allows the court to draw the reasonable inference that plaintiffs were damaged by the alleged breach of contractual obligations because the buyer dispute decisions resulted in between $200,000 and $300,000 being "removed from DSN's PayPal account," and "Maynard's user account" has been suspended, which "prevent[ed] DSN from accepting online payments." 2d Am. Compl. ¶ 28. At this stage of the case, therefore, the court concludes that plaintiffs have raised a right to relief above the speculative level.

In sum, the allegations in the second amended complaint sufficiently plead that PayPal, Inc. had specific contractual obligations to plaintiffs, that PayPal, Inc. breached its obligations, and that, as a result, plaintiffs were damaged. Thus plaintiffs' allegations, read in the light most favorable to plaintiffs, state a claim for breach of contract against PayPal, Inc. As to PayPal Holdings, Inc., however, the claim for breach of contract was properly dismissed.[14]

---

[14]No party raised the issue or argued that a different state's law should be applied to PayPal Holdings, Inc. in the event it was not found to be a party to the contract. Given that the court does not have the benefit of briefing on the issue, that no party points to a fundamental difference of Delaware or Texas law, and that, in similar circumstances, courts have allowed a non-signatory to a contract to enforce contractual provisions either under an equitable estoppel or third-party beneficiary theory, the court will not revisit the conclusion that Delaware law applies to each of plaintiffs' claims. *See, e.g., Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000); *Organ v. Byron*, 435 F.Supp.2d 388, 391 (D. Del. 2006).

I

The final cause of action the court will address is plaintiffs' claim for breach of duty of good faith and fair dealing.

Delaware courts have held that an action for breach of the duty of good faith and fair dealing is a "limited and extraordinary legal remedy," and that terms are to be implied in a contract only where necessary to "handle developments or contractual gaps that the asserting party pleads neither party anticipated." *Nemec v. Shrader*, 991 A.2d 1120, 1125-26, 1128 (Del. 2010). A court should imply such terms only in instances where "the party asserting the implied covenant proves that the other party has acted arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected." *Id.* at 1126. Those expectations are assessed as "at the time of contracting." *Id.*

The second amended complaint does not allege any "developments" or "contractual gaps" in the user agreement that "neither party anticipated," so as to justify inferring additional terms. *Id.* at 1125-26. The facts pleaded do support, however, the conclusion that PayPal, Inc.[15] may have "acted arbitrarily or unreasonably" so as to "frustrat[e] the fruits" of the user agreement. *Id.* at 1126. The second amended complaint thus states a claim for breach of the implied contractual duty of good faith and fair dealing.

_____

[15]Plaintiffs plead that both defendants had, and breached, a duty of good faith and fair dealing. But the court holds that, read in the light most favorable to plaintiffs, this cause of action only states a claim against PayPal, Inc. Indeed, PayPal, Inc. (not PayPal Holdings, Inc.) is a party to the contract, and the seller protection program may only be read as applying to PayPal, Inc. (not PayPal Holdings, Inc.).

## V

Considering the pertinent factors *in toto*, the court concludes that good cause exists for setting aside the judgment of dismissal in part. The court reinstates plaintiffs' claims for breach of contract and breach of the duty of good faith and fair dealing against PayPal, Inc. Defendants are entitled to recover the reasonable attorney's fees and costs incurred in responding to the instant motion. If the parties cannot agree on the amount, defendants must apply for an award within 21 days of the date of the filing of this memorandum opinion and order.

*    *    *

For the reasons explained, the court concludes that plaintiffs are entitled to partial relief from the judgment dismissing this case with prejudice, subject to the requirement that plaintiffs file a third amended complaint within 28 days of the date of this memorandum opinion and order. The third amended complaint must properly plead the citizenship of Maynard Investment Group, LLC d/b/a Discount Sport Nutrition. Should plaintiffs seek to make any other alterations to their pleading, i.e., except as permitted *supra* at note 11 and beyond removal of those claims of which the court today confirms dismissal, they must request leave of court.

Plaintiffs' motion to alter or amend the judgment is granted in part and denied in part, subject to plaintiffs' paying defendants their reasonable attorney's fees and costs incurred in responding to the motion.

**SO ORDERED**.

August 5, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE